491 So.2d 32 (1986)
CLOUD CONSTRUCTION, INC., Plaintiff-Appellee,
v.
SCHNEIDER, INC. and Aetna Casualty and Surety Company, Defendants-Appellants.
No. 85-247.
Court of Appeal of Louisiana, Third Circuit.
May 14, 1986.
Rehearing Denied June 24, 1986.
Writ Denied October 3, 1986.
*33 Victor E. Stilwell and Brian Erikson, Ofdeutsch, Kerrigan & Stiles, New Orleans, for defendants-appellants.
McHale, Bufkin & Dees, Louis D. Bufkin, Lake Charles, for plaintiff-appellee.
Before STOKER, DOUCET and FALKENHEINER[*] JJ.
W.C. FALKENHEINER, Judge Pro Tem.
Plaintiff-Appellee, Cloud Construction, Incorporated, (Cloud) sued Defendant-Appellants, Schneider Incorporated, (Schneider) and its surety, Aetna Casualty and Surety Company, (Aetna) for the sum of $102,344.18 plus interest, attorney's fees, and costs allegedly owed on a contract for labor and materials furnished on a construction project. Schneider filed an answer in the form of a general denial and later filed a reconventional demand for $1,279.38 plus attorney's fees, interest and cost.
After trial, Judgment was rendered in favor of Cloud and against the Defendants, insolido, in the amount of $89,014.78 and for all costs. The reconventional demand of Schneider was dismissed.
Schneider and Aetna have appealed.

FACTS
Schneider had a contract for work at the PPG Industries, Incorporated Plant located in Calcasieu Parish. This contract required Schneider to do certain site preparations which it desired to subcontract. Cloud was contacted and subsequently Schneider and Cloud entered into a written contract dated 20 August, 1982. This contract was executed on Schneider's part by S. Byrne Doyle, its Senior Vice-President and by the Purchasing Manager, whose signature is illegible. It was executed on the part of Cloud by Leonard Cloud, its President.
The work to be performed under the contract was listed in an Exhibit C attached to the printed contract form furnished by Schneider. Exhibit C referred to certain drawings which were not attached to the original contract and contained the detailed description of the work to be done. Cloud was to be paid $43,500.00 for performing its obligation under the contract.
Cloud immediately began work, but Schneider began to request change orders and additional work. These change orders ultimately totalled nine in number and amounted to $114,944.85. All of the change orders were in writing and were consented to by Cloud. They were executed on Schneider's part by Richard Kalinowski. In addition to the nine change orders there were also thirty-four time and material change orders totalling $10,903.57, all of which were paid in full.
Schneider's home office is located in Pittsburg, Pennsylvania and the original contract and the change orders were executed by its stated officers who were located at its home office.
After Cloud had begun work and had begun to receive the change orders, time and material change orders and the detailed drawings, he realized that the contract was undergoing material changes with which he expressed dissatisfaction to the extent that he advised Schneider's people he was considering quitting the job or defaulting on the contract. At this point Cloud conducted oral negotiations with Don Mills, the Regional Manager of Schneider. Mills was in contact with his immediate supervisor in Pennsylvania, a man named McCahill. McCahill was the Director of Marketing for Schneider and Don Mills was *34 its Regional Manager, neither of whom technically had the authority from Schneider to bind it contractually. Nevertheless, first Don Mills, and subsequently McCahill, at a crawfish boil, advised Cloud to continue work, and that if he kept proper records of the work done and the cost, he would be paid his actual cost for labor and materials plus a 5% profit.
Cloud was satisfied with these representations and continued to work, subsequently completing all of the work during the month of April, 1983. No complaint was made with respect to the quality of the work done.
As heretofore stated, Schneider paid Cloud all of the time and material change orders and paid all of the initial contract price of $43,500.00 and the nine change orders totalling $114,944.85 with the exception of the sum of $17,803.52 which was withheld by Schneider and which it admits to be owed. When the contract was completed Cloud billed Schneider and Schneider presented Cloud with a lien affidavit and waiver of liens which it required to be executed before final payment. Because of the dispute with respect to the additional work, Cloud refused to execute the waiver of lien and subsequently filed a lien for the amounts claimed.
Schneider then had the lien bonded with Aetna in accordance with Louisiana law and this litigation resulted.

ISSUES
The Defendant-Appellants have stated that the two issues presented here are:
(1) Whether the trial Court properly invoked the doctrine of equitable estoppel to permit appellee to recover its costs incurred plus 5%.
(2) Whether the trial Court properly denied Schneider's reconventional demand.

OPINION
The trial Court first found that there was no verbal contract between Cloud and Schneider for the additional work. Although the Court found that Mills and McCahill had apparent authority to bind Schneider, and Cloud was entitled to rely upon their verbal representations, there was no oral contract because Cloud did not prove any specific agreement as to the work to be done and the amount to be paid for it. Nevertheless, the trial Court found that Cloud was entitled to recover on the basis of equitable estoppel.

THE AUTHORITY OF MILLS AND MCCAHILL TO BIND SCHNEIDER
The trial Court found that Mills and McCahill had apparent authority to bind Schneider, and Cloud was entitled to rely upon it.
The record reveals that Schneider had been doing business in the Lake Charles area for some time, and had resident agents locally. An individual named Al Jackson was the Regional Manager and was replaced by Don Mills. The internal structure of Schneider was such that Jackson and Mills were in the Sales and Marketing Division headed by McCahill in Pittsburg, none of whom were empowered to bind Schneider to the type of contract involved here.
Cloud knew both Jackson and Mills, and was uncertain as to their precise authority with Schneider and their positions within the organization of that corporation. Schneider had placed a large advertisement in the local press with Mills' picture, identifying him as its Regional Manager and containing other promotional information (Exhibit P-4).
It is true that all of the written change orders had been executed by Richard Kalinowski in Pittsburg on Schneider's behalf, but it is also true that the original contract had been executed by S. Byrne Doyle, Schneider's Senior Vice-President and by its Purchasing Manager whose signature on the contract is not legible (Exhibit D-1, tr. pg. 16). Thus, when Cloud was told by Mills to continue the work being requested of him by Schneider's people on the ground, and this was verified by Mills' superior, *35 McCahill, at the crawfish boil, he was justified in proceeding to do the work of which Schneider was fully cognizant.
The doctrine of apparent authority requires:
(1) The manifestation of the authority by the principal.
(2) Reasonable reliance upon the purported authority of the agents as a result of the manifestation.
See Byles Welding and Tractor, Incorporated v. E.W. McDaniel, 441 So.2d 48, (La. App. 3rd Cir.1983); Pargas, Inc. v. Estate of Taylor, 416 So.2d 1358 (La.App. 3rd Cir.1982); Reeves v. Celestron, 473 So.2d 397 (La.App. 3rd Cir.1985), writ not considered 477 So.2d 698 (La.1985).
We are of the opinion that these requirements were present in this case, that Cloud satisfied its burden of proving the apparent authority, and that the trial Court was correct in its conclusions on this issue.

THE CONTRACT BETWEEN SCHNEIDER AND CLOUD
Schneider contends that the contract is limited to the written provisions of the original document (Exhibit D-1) supplemented by the nine written change orders and the thirty-four written time and material changes. Plaintiff contends that the original contract was expanded after its execution by the additions of the more detailed drawings and specifications and the oral agreement of Schneider to pay the actual additional cost plus 5% profit, all of which is in addition to the nine change orders and thirty-four time and material charges.
The manner and circumstances under which this contract was confected casts doubt over whether the essential element of consent by Schneider existed at the time the contract was signed on August 20th, 1982. (L.S.A. C.C. Arts. 1927 and 1948, et seq).
Cloud's uncontradicted version of the events giving rise to the execution of the contract, corroborated by some of the documents themselves, are as follows:
Schneider had entered into a contract with PPG for plant construction and modification. Schneider required local contractors for some of the work, and first attempted to award the job to the White Construction Company owned by Homer T. White. White had taken bankruptcy and was turned down by PPG so that it became necessary for Schneider to find another sub-contractor since work on the plant was already in progress. Schneider, through its Regional Manager, Al Jackson, and others, then solicited Cloud to do this work. Cloud initially turned down their overtures, but they continued soliciting him, and after consulting with Kalinowski and other representatives of Schneider, Cloud was persuaded to go look at the job where the work was described to him. Schneider met with Kalinowski in a motel room and looked over some of the drawings and plans shown to him and had offered to do the work for an amount of approximately $50,000.00. Kalinowski told Cloud that this was too high and represented to him that they had reliable bids and estimates that the work was only worth approximately $40,000.00 and assured him that he could make money at that figure.
Subsequently, Cloud agreed to do the work and was presented the written contract dated August 20th, 1982. (Exhibit D-1, tr. pg. 165). The contract was prepared by Schneider and was on its standard form with certain standard exhibits. It is interesting to note that Exhibit B which is the compliance certificate to an executive order was not executed until September 9th, 1982.
None of the drawings described in Exhibit C are in evidence and the descriptions of the work to be done by Cloud under the contract at this time were vague and indefinite.
Cloud testified that after August 20th, 1982 he began work on the project and began to receive additional data through the mail in the form of detailed plans and specifications. He was also receiving instructions *36 on the job site from Schneider's engineers, all of which made him realize that the job was not as originally presented to him. This is corroborated by the fact that on August 23rd, 1982 Schneider sent to Cloud eight drawings described on Exhibit C of the contract together with at least fourteen additional pages of specifications. These were no doubt received by Schneider several days after that and would corroborate his testimony that after about one week's work on the project he became aware that Schneider was changing the work to be done under the original contract.
It was not until August 29th, 1982 that the first written change order was sent to Cloud, and it is apparent that it referred to work other than that described in the drawings in Exhibit D-2 since it refers to an entirely different set of drawings and contains other specific information (see Exhibit D-4, tr. pg. 194). In fact, none of the change orders, all of which are set out in Exhibit D-4, list work, or refer to drawings contained in the original contract.
When Cloud became aware of the changed nature of the work to be done under the contract he expressed his displeasure and it was at this point that he began negotiations with Mills, and later with McCahill, which led up to the representations discussed above, and his decision to stay on the job. At this point he became aware of the details and his acceptance of the revised base contract constituted a waiver of any right to vitiate the contract for error and lack of consent.
Chapter 13 of Title V of the Louisiana Civil Code set out the basic rules for interpretation of contracts. Of particular application here are the provisions of the following Articles:
Article 2053:
"A doubtful provision must be interpreted in light of the nature of the contract, equity, usages, the conduct of the parties before and after the formation of the contract, and of other contracts of a like nature between the same parties."
Article 2054:
"When the parties made no provision for a particular situation, it must be assumed that they intended to bind themselves not only to the express provisions of the contract, but also to whatever the law, equity, or usage regards as implied in a contract of that kind or necessary for the contract to achieve its purpose."
Article 2055:
"Equity, as intended in the preceding articles, is based on the principles that no one is allowed to take unfair advantage of another and that no one is allowed to enrich himself unjustly at the expense of another.
Usage, as intended in the preceding articles, is a practice regularly observed in affairs of a nature identical or similar to the object of a contract subject to interpretation."
Article 2056:
"In case of doubt that cannot be otherwise resolved, a provision in a contract must be interpreted against the party who furnished its text.
"A contract executed in a standard form of one party must be interpreted, in case of doubt, in favor of the other party."
Article 2057:
"In case of doubt that cannot be otherwise resolved, a contract must be interpreted against the obligee and in favor of the obligor of a particular obligation.
"Yet, if the doubt arises from lack of a necessary explanation that one party should have given, or from negligence or fault of one party, the contract must be interpreted in a manner favorable to the other party whether obligee or obligor."
These provisions of law require the Court to apply equitable principles which the trial Court did by application of the doctrine of equitable estoppel. The trial Court correctly cited the law applicable to equitable estoppel as follows:
"Turning next to Cloud's contention that he is entitled to recover under a theory of equitable estoppel, the Court must first determine whether the elements *37 necessary for application of a doctrine of equitable estoppel are present in this instance. Those elements are, first, a representation by conduct or work; second, a justifiable reliance thereon; and third, a change of position to one's detriment because of the reliance. See Louisiana Paving Company and State Department of [sic] Highways, 372 So.2d 245 (La.App. 1st Cir.1979); John Bailey Contractor, Inc. v. State of Louisiana Through the Department of Transportation and Development, 425 So.2d 326 (La.App. 3rd Cir.1982), affirmed 439 So.2d 1055 (La.1983). Since estoppel bars a normal assertion of rights, the Courts apply such a doctrine cautiously. American Bank and Trust Company v Trinity Universal Insurance Company, 251 La. 445, 205 So.2d 35 (La.1967). In that case, the Supreme Court observed, and I quote: `Equitable estoppel may be defined as the effect of the voluntary conduct of a party whereby he is precluded from asserting rights against another who has justifiably relied upon such conduct and changed his position so that he will suffer injury if the former is allowed to repudiate the conduct. Founded upon good faith, the doctrine is designed to prevent injustice by barring a party under special circumstances from taking a position contrary to its prior acts, admissions, representations or silence.' (Citations omitted) Id. at page 40."
Transcript pages 253-254.
The trial Court then found that each of the elements of equitable estoppel were present in this case and we find no manifest error in that decision.
Even though the trial Court found that Mills and McCahill had apparent authority to represent Schneider and made the representations to him discussed above, it nevertheless concluded that there was no verbal agreement because there was no specific agreement as to the work to be done or the amount to be paid for the work (see tr. pg. 253). Nevertheless, the trial Court then went on to determine, correctly, in our opinion, that the specific work which Cloud had performed for Schneider under the expanded contract was set forth in Exhibit P-3 (see tr. 132) and allowed all of that itemized statement except for $4,200.00 in office expenses. All of this work was performed, as heretofore stated, pursuant to the additional instructions and orders received from Schneider after August 20th, 1982 and exclusive of the items contained in the nine change orders and thirty-four time and material charges.
Furthermore, Schneider never challenged the fact that this work was being done at the time or the amount of the charges. At the trial, Schneider did make some effort to show that Cloud's operations were inefficient and that some of the material might not have been necessary. Schneider's witnesses criticized Cloud's work schedule as being uncoordinated and without a plan, but this hardly appears to be valid criticism in view of the many changes that Schneider was presenting to Cloud. The major changes represented by the nine change orders themselves indicated that Schneider, and possibly the owners of the plant, were making major modifications as the work proceeded.
Application of the principles contained in the above cited Civil Code Articles to the facts of this case justify a conclusion that the original base contract had been orally amended by the parties to cover the original amount of the contract plus the items set forth in Plaintiff's Exhibit P-3 less the $4,200.00 office expense. This is in addition to the nine change orders and thirty-four time and material charges which speak for themselves.
The Judgment of the trial Court in favor of Cloud and against Schneider in the sum of $67,820.25 plus additional 5% profit of $3,391.01 and the admitted balance of $17,803.52, totalling $89,014.78 with all costs is therefore affirmed.
AFFIRMED.
NOTES
[*] W.C. FALKENHEINER, JUDGE PRO TEMPORE.