526 So.2d 1220 (1988)
Roland F. PESSON, Plaintiff-Appellee,
v.
Wilse KLECKLEY, Defendant-Appellant.
No. 87-178.
Court of Appeal of Louisiana, Third Circuit.
April 6, 1988.
*1221 Henry R. Liles, Lake Charles, for plaintiff-appellee.
Boellert & Boyer, Lee W. Boyer, Lake Charles, for defendant-appellant.
Before GUIDRY, DOUCET and KNOLL, JJ.
DOUCET, Judge.
Defendant, Wilse Kleckley, appeals from a judgment rendered against him and in favor of plaintiff, Roland F. Pesson, on Pesson's suit for full payment according to the terms of a breached lease agreement, attorney fees, and damages for repair of the leased premises.
Pesson, who runs a plumbing business in Lake Charles, sought to lease property owned by him located around the corner from his place of business. It appears that he was on the verge of reaching an agreement with Preston LeBlanc when problems arose and LeBlanc was unable to complete the deal. Thereafter, LeBlanc acted as a sort of middleman between Pesson and defendant, arranging a lease agreement between *1222 the two parties. Preston LeBlanc was not a party to this suit nor did he testify at trial.
Jeanette Dupree, secretary for Pesson Plumbing, also handled Pesson's personal business matters. She gave the pertinent information regarding the terms and property to be leased to someone, apparently Preston LeBlanc, who prepared the lease agreement. Pesson agreed to construct a building on the property according to plans from a pizza franchise company, Spatchio's. Kleckley intended to operate a pizza business. The rent was to be $625.00 per month for the first three years, to be renegotiated thereafter based upon a percentage of gross sales. The stated duration of the lease was six years commencing December 1, 1983. The lease agreement also provided that defendant would maintain insurance coverage on the building, be liable for damages to the premises, and, should he fail to pay the rent as due, be liable for full payment of the rent according to the unexpired terms of the lease as well as necessary attorney's fees.
Pesson and defendant never personally met or discussed the terms of the lease. Kleckley signed the lease first and then it was brought to Pesson for signing. The parties to the lease were listed as "Roland F. Pesson, lessor," and "Dixie Food Service, Wilse Kleckley, lessee." The agreement was signed by Pesson and by Kleckley as "Wilse Kleckley VP" over the typed words, "Wilse Kleckley, Dixie Food Service." The lease was signed before the building was completed. After the building was completed, at a higher cost than anticipated by Pesson, an addendum was signed by Gerald LeBlanc on behalf of Kleckley, increasing the rent to $793.75 per month. This addendum was effective December 1, 1983, the date the original lease was to commence. It was signed "Gerald P. LeBlanc" over the typed words "Dixie Food Service, Wilse Kleckley, VP, by Gerald LeBlanc, Manager, Lessee."
Kleckley took possession of the building and operated a pizza-making and delivery business at that location under the name Spatchio's, and, later, Cajun Pizza. In February 1986, Kleckley ceased paying rent and removed equipment and fixtures from the building. Plaintiff subsequently filed this suit for breach of the contract of lease and for a writ of sequestration. The writ of sequestration issued and Kleckley later filed a rule to dissolve the writ, seeking damages for wrongful issuance.
Kleckley admitted that the lease agreement was breached but claimed that he was not personally liable as he signed the lease in his capacity as vice-president of Dixie Food Systems, Inc. He also claimed that the writ of sequestration was wrongfully issued as plaintiff's lessor's privilege no longer existed, the property having been removed from the premises more than fifteen days before the petition was filed.
Dixie Food Systems, Inc. was a valid Louisiana corporation at the time the lease was executed and Kleckley was a vice-president of the corporation. Kleckley admitted that he never spoke with Pesson before executing the lease, specifically with regard to the capacity in which he was signing the lease. The following colloquy between plaintiff's counsel and Kleckley is enlightening:
"Q Now, do you recall ever discussing with Mr. Pesson the fact that you were acting in any capacity in execution of this lease other than as an individual?
A I don't recall ever discussing anything with Mr. Pesson.
Q In fact, Mr. Kleckley, you never did talk to Mr. Pesson before this lease was executed, did you?
A No, sir.
Q Did you ever do anything which would give Mr. Pesson the impression that you were acting in any capacity other than individually when you executed this lease?
A Would you repeat that question?
Q Did you do anything elseyou said you didn't talk to him. Was there any other way that you know of that he could have known that you were executing this lease in any way other than individually, other than talking to him?
A I wouldn't think so."
*1223 Pesson testified that he was under the impression that Kleckley was binding himself personally to the contract of lease and was simply an individual doing business as Dixie Food Service. He stated that he made it clear "that Mr. Kleckley had to execute this lease individually." It was uncertain exactly to whom he made this clear but presumably it was to Preston LeBlanc, the middleman. Pesson stated that he knew Kleckley had the finances to do the project on his own and that he was "very well known for his finances." He first became aware there was a corporation when, on February 17, 1986, an attorney called him on behalf of Kleckley to discuss Kleckley's inability to continue paying rent according to the terms of the lease.
Pesson's secretary, Jeanette Dupree, received rental payments for the leased property in question and compiled a list of the checks received which was filed in evidence. Approximately one-half of the checks were written on the account of Dixie Food Service, Inc. An almost equal number, however, were written on the account of Continental Convenience Stores of La. d/b/a Wizzard Fastop. Defendant asserted that Pesson had notice that he was acting in a corporate capacity by virtue of his receipt of these checks written on the account of Dixie Food Services, Inc. in addition to viewing Kleckley's signature with "VP" next to it over the typed words "Dixie Food Service." Pesson denied ever seeing the checks since his secretary handled that task.
Gerald P. LeBlanc testified that he ran and operated the pizza business. He is listed as the president and secretary/treasurer of Dixie Food Systems, Inc. Whenever he had a question regarding the operation of the pizza business, however, Kleckley answered it. LeBlanc testified that he signed the addendum to the lease after discussing it with Kleckley who authorized him to sign it. He stated that Kleckley never gave him authority to bind him personally for any debt. When asked in what capacity had he signed the addendum LeBlanc first stated that as far as intent he couldn't say that he signed it for the corporation or himself personally but then stated that he "assumed" he signed it for the corporation "because it is typed underneath." LeBlanc also signed most of the checks for the rent written on the account of Dixie Food Services, Inc. When asked whether he had authority to act for the corporation he referred to the checks and stated "evidently so, I signed the checks and paid the bills." On at least one occasion Joseph Duhon, an employee of the pizza business who stated that he was an employee of Dixie Food Systems, Inc., signed a check for the rent on the account of Dixie Food Services, Inc.
Pesson claimed in his petition that the lessee vacated the premises and removed the equipment "on or about February 17, 1986." He testified that immediately after receiving the phone call from Kleckley's attorney on February 17th he went to the property, entered the building, and discovered that property had been removed and the building damaged. Plaintiff's son, Roland Pesson, Jr., testified that on Sunday, February 16th he passed by the building and noticed the outside refrigeration condensing unit missing. He claimed that only two days before then, on Friday, February 14th he had seen the unit there. He also testified that Alan Barnes, an employee of Wizzard Enterprises, told him that he had removed the cooking equipment from the building on the weekend of February 16, 1986.
Alan Barnes testified that he helped remove the equipment from the leased premises. The equipment was removed on several occasions but he remembered that the last piece of equipment he removed, a large oven, was removed on February 6, 1986. He recalled that date because, he alleged, he had a receipt from a rental company where he had rented a trailer to haul the oven away. The trailer was supposedly rented on February 6, 1986, and returned the next day, February 7th. The receipt was not filed in evidence and Barnes apparently did not produce it when he testified. In response to a question from the court Barnes stated that the condensing unit was removed before February 6, 1986.
*1224 A contractor testified and provided an estimate of $4,619.00 to repair damages to doors, scratched door frames, floors damaged by equipment dragged across them, walls damaged where plumbing fixtures had been removed, and for the costs of the replacement of those plumbing fixtures.
Based upon this evidence the trial court found that Kleckley was personally bound by the terms of the lease and addendum. The trial judge awarded plaintiff $35,718.75 for the amount owed under the terms of the unexpired lease, and $5,357.81 for attorney's fees. He also found that the writ of sequestration was properly issued and dismissed defendant's rule to dissolve it. The court reserved plaintiff's rights to proceed against defendant for unpaid taxes, insurance, repairs, and maintenance.
On appeal defendant contends that the trial court erred in holding that defendant was personally liable on the lease and addendum and by not dissolving the writ of sequestration or awarding him damages and attorney's fees.
We initially recognize that the issues presented all turn on questions of fact. There was considerable sketchy and conflicting testimony and great deference will be accorded the trial court's evaluation of the testimony of the various witnesses as well as his general findings of fact based upon the evidence as a whole. Virgil v. American Guaranty and Liability Insurance Company, 507 So.2d 825 (La.1987); Arceneaux v. Domingue, 365 So.2d 1330 (La.1978); Canter v. Koehring Company, 283 So.2d 716 (La.1973).
Generally, one who claims to be acting in a corporate capacity has a duty to disclose that he is acting as an agent for the corporation and not as an individual. The burden is upon the one claiming the agency relationship to prove he disclosed his capacity and the identity of his principal if he is to escape liability. La.C.C. arts. 3012, 3013; Robin Seafood Company, Inc. v. Duggar, 485 So.2d 593 (La.App. 4th Cir. 1986); Andrus v. Bourque, 442 So.2d 1383 (La.App. 3rd Cir.1983); Martin Home Center, Inc. v. Stafford, 434 So.2d 673 (La. App. 3rd Cir.1983); Eastin v. Ramey, 257 So.2d 717 (La.App. 3rd Cir.1972).
However, express notice of the agent's status and the principal's identity is unnecessary if the facts and circumstances surrounding the transactions, combined with the general knowledge that persons in that business are usually acting as agents, demonstrate affirmatively that the third person should be charged with notice of the relationship. Martin Home Center, Inc. v. Stafford, supra; Ruckman v. Mashburn, 428 So.2d 531 (La.App. 4th Cir.1983); J.T. Doiron, Inc. v. Lundin, 385 So.2d 450 (La. App. 1st Cir.1980).
Defendant claims that Pesson should have known that he signed in a corporate capacity because of the placement of the designation "VP" after his signature and the typed words Dixie Food Service underneath. He cites Pesson's other business activities as evidence that he is aware that "VP" means vice-president and only corporations have officers. He also cites the payment of rent by checks written on the account of Dixie Food Service, Inc. Although Pesson claims that he never saw the checks we feel he is charged with notice of them since his agent-secretary, Ms. Dupree, accepted them. However, the acceptance of checks written on the account of a corporation is not sufficient to prove constructive notice of defendant's agency status. Robin Seafood Company, Inc., supra; American Rent All, Inc. v. Culotta, 328 So.2d 743 (La.App. 4th Cir.1976); Darr v. Kinchen, 176 So.2d 638 (La.App. 1st Cir.1965), writ denied 248 La. 386, 178 So.2d 664 (1965).
Moreover, although the names are similar there is no evidence in the record, other than the cancelled checks, that there is a valid corporation with the name of Dixie Food Service, Inc. Articles of Incorporation contained in the record show a valid Louisiana corporation named Dixie Food Systems, Inc. Had Pesson been put on notice and checked with the Secretary of State's office he would not have found a valid corporation by the name of Dixie Food Service, Inc. We also note that almost one-half of the rental checks were *1225 written on the account of Continental Convenience Stores of La. d/b/a Wizzard Fastop. This was apparently another one of Kleckley's corporations.
Kleckley was obviously engaged in at least several business activities under different corporate and/or trade names. He may have become careless about stating which identity he was contracting under, at least with regard to entering into this lease agreement with Pesson. The alleged corporate checks, the placing of "VP" next to his signature, and the use of the name Dixie Food Service, do not demonstrate affirmatively that Pesson should have known that Kleckley was signing in other than his individual capacity, conducting business under a trade name. Especially when the evidence is considered in light of Pesson's testimony, which the trial court apparently accepted, that he made it clear he would only contract with Kleckley as an individual.
Our previous analysis concentrates primarily on whether Pesson had noticed Kleckley was contracting in his capacity as an agent for a corporation. However, it is possible that for one reason or another Kleckley never intended to contract in the name of Dixie Food Systems, Inc. as he alleged. Kleckley himself was an experienced businessman who should have known how to sign a contract to bind a corporation rather than himself personally. By signing in the manner in which he did, Kleckley may have intended to create some confusion regarding who was liable on the lease agreement. Perhaps Kleckley, knowing that Pesson would only contract with him in his individual capacity, signed in this manner foreseeing a possible failure of the business.
We next examine the question of Gerald LeBlanc's authority to bind Kleckley to the terms of the addendum. An agent is defined as one who acts for or in the place of another by authority from the latter. La.C.C. art. 2985 et seq.; Craft v. Trahan, 351 So.2d 277 (La.App. 3rd Cir. 1977), writ denied 353 So.2d 1336 (La.1978). An actual agency relationship may be either express or implied. For some acts an agent's authority must be express. This is true for the agent to buy, sell, contract a loan, acknowledge a debt, draw or endorse promissory notes, and generally where the acts to be done are not merely those of administration or such as facilitate such acts. La.C.C. art. 2997; Hugh O'Connor, Inc. v. J. Robert Autenreith, Inc., 343 So.2d 1090 (La.App. 4th Cir.1977), writ denied 345 So.2d 59 (La.1977). We think the act of binding a principal to the terms of a lease is one of those types of acts requiring express power. For LeBlanc to have had actual authority to bind Kleckley personally to the addendum the power given must have been express.
However, there is also the concept of apparent authority which is a judicially created concept of estoppel which operates in favor of a third party seeking to bind an apparent principal for the unauthorized act of his apparent agent. Boulos v. Morrison, 503 So.2d 1 (La.1987); Broadway v. All-Star Insurance Corporation, 285 So. 2d 536 (La.1973). Even if LeBlanc did not have actual express authority to bind Kleckley personally, he could have still had the apparent authority to do so. We find the issue of apparent authority to be dispositive and will therefore pretermit discussion of the issue of actual express authority.
For a third party to hold a principal liable under the doctrine of apparent authority it must be shown that: (1) the principal made some form of manifestation to the innocent third party; and, (2) that the third party relied on the purported authority of the agent as a result of the principal's manifestations. Boulos v. Morrison, supra; Cloud Construction, Inc. v. Schneider, Inc., 491 So.2d 32 (La.App. 3rd Cir. 1986), writ denied, 494 So.2d 334 (La.1986). The burden of proving apparent authority is on the party relying on the mandate. Boulos v. Morrison, supra; CNA Insurance Company v. Nutone Corporation, a Division of Scovill Manufacturing Company, 461 So.2d 518 (La.App. 3rd Cir.1984).
The record evidence furnishes a reasonable basis for a finding that LeBlanc *1226 had apparent authority to bind Kleckley personally. Kleckley allowed LeBlanc to sign the addendum after Kleckley himself had already signed the original lease in the manner in which he did. The signing by Kleckley, as we have already found, could have reasonably been interpreted by Pesson as binding Kleckley personally. Kleckley authorized LeBlanc to sign the addendum and he did so with "Dixie Food Service, Wilse Kleckley, VP, by Gerald LeBlanc, Manager" typed underneath his signature. This constituted a manifestation by Kleckley to Pesson that LeBlanc had authority to bind him personally just as Pesson believed Kleckley had bound himself personally on the original lease. In addition, after the addendum was signed, Pesson began receiving monthly rent payments for the increased rent. Those checks written on the account of Dixie Food Service, Inc., were signed by Gerald LeBlanc.
We again note that there is no valid Louisiana corporation named Dixie Food Service. If, as Kleckley argues, there was a mistake and it really should have been typed Dixie Food Systems, Inc., why didn't Gerald LeBlanc sign the addendum in his capacity as president of that corporation? Instead he signed the addendum as manager of Dixie Food Service.
Viewing the evidence as a whole, we find that the record evidence furnished a reasonable basis for the trial court to find that Wilse Kleckley was personally bound by the terms of the lease agreement and addendum. We are unable to say that such findings by the trial court were clearly wrong.
We now address defendant's assertion that the trial court erred by dismissing his rule to dissolve the writ of sequestration. A lessor has, for the payment of his rent and other obligations of the lease, a right of pledge on the movable effects of the lessee, which are found on the property leased. La.C.C. art. 2705. La.C.C. art. 2709 states in part:
"In the exercise of this right, the lessor may seize the objects subject to his privilege before the lessee removes them from the leased premises, or within fifteen days after they have been removed by the lessee without the consent of the lessor, if they continue to be the property of the lessee, and can be identified."
The lessor loses this privilege unless he takes steps to enforce his privilege within fifteen days after removal of the property from the leased premises. La.C.C. art. 2709; Edmonds v. Totem Stores, 229 La. 467, 86 So.2d 104 (1956).
A lessor with a privilege on his lessee's property has a right, during pendency of an action against the lessee or the lease, to have property seized under a writ of sequestration if the lessee may conceal, dispose, waste the property or remove it from the parish. La.C.C.P. art. 3571. Such sequestration may be obtained before the rent is due if the lessor has good reason to believe that the lessee will remove the property. La.C.C.P. art. 3572.
The law also gives the lessee certain rights. La.C.C.P. art. 3506 states:
"The defendant by contradictory motion may obtain the dissolution of a writ of attachment or of sequestration, unless the plaintiff proves the grounds upon which the writ was issued. If the writ of attachment or of sequestration is dissolved, the action shall then proceed as if no writ had been issued.
The court may allow damages for the wrongful issuance of a writ of attachment or of sequestration on a motion to dissolve, or on a reconventional demand. Attorney's fees for the services rendered in connection with the dissolution of the writ may be included as an element of damages whether the writ is dissolved on motion or after trial on the merits."
After filing a motion to dissolve a writ of sequestration on the grounds that it was wrongfully issued, the burden of proof is on the creditor to establish facts supporting the lawful issuance of the writ. Sears Roebuck and Co. v. Guilbault, 452 So.2d 333 (La.App. 4th Cir.1984); Huval Tractor, Inc. v. Journet, 413 So.2d 978 (La.App. 3rd Cir.1982), writ denied, 420 So.2d 446 (La. 1982).
*1227 Defendant contends that plaintiff did not meet his burden of proofthat he failed to establish that the property sequestered had been removed from the leased premises for no longer than fifteen days before he filed the petition for writ of sequestration. Plaintiff filed the petition on March 3, 1986, claiming the lessor's privilege on the grounds that the property was not removed until the weekend of February 15 and 16, 1986. Assuming arguendo that all of the property was removed on February 15th, the fifteen-day period set by La.C.C. art. 2709 would have expired after Monday, March 3rd, since the fifteenth day would have fallen on a holiday, Sunday. Therefore plaintiff's petition would have been filed within fifteen days from the date the property was removed.
Plaintiff was required to establish that it was more probable than not that the property was not removed before February 15, 1986. The trial judge found that the property had not been removed from the premises more than fifteen days before the petition was filed, or, in other words, that property had not been removed earlier than February 15, 1986. Plaintiff's son testified that he saw the condensing unit on the property Friday, February 14th, and noticed it was missing Sunday, the 16th. This directly contradicts the testimony of Alan Barnes who testified that the condenser had been removed before February 6th, the day on which the last piece of equipment was removed. His recollection of the dates, however, was based upon a dated receipt for a rented trailer which was not produced at trial. Plaintiff's son also testified that Barnes informed him that the equipment had been removed the weekend of February 15-16th. Coincidentally, Pesson received a telephone call from Kleckley's attorney on Monday, February 17th, notifying him that Kleckley was breaching the contract of lease.
Alan Barnes worked for and/or with the defendant. He removed the property from the leased premises at the direction of defendant or someone connected with him or one of his businesses. Barnes secreted the property at a particular location at the direction of defendant's brother. The trial judge obviously did not find Barnes's testimony credible and instead chose to believe the facts as related by Pesson and his son. The trial judge apparently drew a conclusion that since the condenser was removed during the weekend of February 15-16th, it was more probable than not all of the property was removed at that time. We find that the record evidence furnishes a reasonable basis for that inference and finding of fact and we are unable to say that such a finding is clearly wrong.
For the reasons assigned the judgment of the trial court is affirmed. All costs of this appeal are assessed against defendant-appellant.
AFFIRMED.