**SCHWEGMANN BANK & TRUST CO. OF JEFFERSON, Plaintiff–Appellee,**

v.

**Elva S. FALKENBERG, et al., Defendants,**

**Charles B. Caldwell, Jr., Defendant–Appellant.**

No. 90–4580.

United States Court of Appeals, Fifth Circuit.

May 28, 1991.

Wayne Swift, Robert J. White, Dallas, Tex., for defendant-appellant.

James R. Madison, Jeffrey W. Weiss, Wiener, Weiss, Madison & Howell, Shreveport, La., for plaintiff-appellee.

Before RUBIN, POLITZ, and DUHÉ, Circuit Judges.

DUHÉ, Circuit Judge.

Pursuant to Louisiana's version of the Uniform Commercial Code, a bank sued for collection on several investor notes, and the district court granted the bank's motion for summary judgment. One of the defendants, Charles B. Caldwell, Jr., now claims that he raised a triable issue of fact on whether his note was negotiable and whether the bank was entitled to holder in due course rights under the shelter rule. We affirm.

Schwegmann Bank and Trust Company of Jefferson, which held Caldwell's note, sued for collection when Caldwell failed to pay the interest due on the note. Caldwell originally executed the note in favor of East Pointe Land Partners 1985 Limited Partnership. The note contains a choice of law clause specifying that Louisiana law governs any dispute.

Q–L, the parent corporation of East Pointe, obtained a line of credit for four million dollars from the Bank of Commerce in Shreveport. Q–L designated Quinn–L Capital Corporation, an affiliated company, as the borrowing entity. The express purpose of the line of credit was to warehouse investor notes during the syndication of limited partnerships.

In September 1985, the Bank of Commerce loaned one million dollars to Quinn–L pursuant to the line of credit. This note was secured in part by the pledge of the defendants' investor notes. Each investor note was endorsed by the payee, Q–L, to the order of Quinn–L and then from Quinn–L to the order of the Bank of Commerce.

The Bank of Commerce soon issued to Schwegmann two certificates of participation representing Schwegmann's contribution of over $900,000 to the one-million dollar loan. The certificates noted that the loan was secured by various investor notes. In April 1986, the Bank of Commerce negotiated to Schwegmann the one-million-dollar note, along with the investor notes that secured it. The bank properly endorsed all notes to the order of Schwegmann.

Later, Quinn–L and its related entities experienced serious financial problems and sought protection under the bankruptcy laws. After suing the defendants in federal district court, Schwegmann filed a motion for summary judgment, seeking to

have itself declared a holder in due course of the investor notes.

The district court granted the motion, finding that Schwegmann was a holder in due course under the shelter rule because its transferor of the notes, the Bank of Commerce, was a holder in due course. *See* La.Rev.Stat.Ann. § 10:3–201. The court also concluded that since the defendants could assert no real defenses, they could not defeat Schwegmann's rights as holder in due course.

Caldwell appeals the grant of summary judgment. He argues that (1) in concluding that his note is a negotiable instrument, the court erred because the note fails to specify a sum certain, as required by the U.C.C.; and (2) in finding that the Bank of Commerce was a holder in due course, the court erred because the evidence showed that the bank participated in fraud and securities violations. *See* La.Rev.Stat.Ann. § 10:3–201.

*Standard of Review*

Summary judgment is appropriate if the record discloses "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). In reviewing the summary judgment, we apply the same standard of review as that applied by the district court. *Waltman v. International Paper Co.*, 875 F.2d 468, 474 (5th Cir.1989); *Moore v. Mississippi Valley State Univ.*, 871 F.2d 545, 548 (5th Cir.1989).

The pleadings, depositions, admissions, and answers to interrogatories, together with affidavits, must demonstrate that no genuine issue of material fact remains. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). We must "review the facts drawing all inferences most favorable to the party opposing the motion." *Reid v. State Farm Mut. Auto. Ins. Co.*, 784 F.2d 577, 578 (5th Cir.1986).

To survive a properly supported motion for summary judgment, however, the non-movant "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Electric*

*Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). If the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, then there is no genuine issue for trial. *Id.* at 587, 106 S.Ct. at 1356; *see Boeing Co. v. Shipman*, 411 F.2d 365, 374–75 (5th Cir.1969) (en banc).

*Statutory Framework*

Louisiana has adopted most of the Uniform Commercial Code and codified it in Title 10 of the revised statutes. *See* La. Rev.Stat.Ann. § 10:1–101 *et seq.* Section 3–201, commonly known as the shelter rule, provides that the transfer of a negotiable instrument vests in the transferee all the rights of the transferor, as long as (1) the transferee was not personally involved in any fraud or illegality; and (2) the transferee was not a prior holder who had notice of a defense or claim against the instrument. La.Rev.Stat.Ann. § 10:3–201.

Pursuant to this section, then, the transferee of a holder in due course acquires all the rights of the holder in due course as long as the transferee satisfies the section's two requirements. *See Reconstruction Fin. Corp. v. Holloway*, 191 La. 583, 186 So. 35, 39 (1938); J. White & R. Summers, *Uniform Commercial Code*, § 14–2 at 696 (3d ed. 1988). There are no allegations that Schwegmann was involved in any fraud or illegality or that Schwegmann was a prior holder with notice of a valid defense. Accordingly, if the Bank of Commerce was a holder in due course of Caldwell's note at the time the note was pledged to it, then Schwegmann, as its transferee, is entitled to holder in due course status as well.

Caldwell challenges this result on two grounds. First, he claims that his note is not a negotiable instrument under Louisiana law. Second, he alleges that the Bank of Commerce was not a holder in due course.

*Negotiability of the Note*

A writing must meet the requirements of section 3–104 to qualify as a negotiable instrument under Louisiana law.

*See* La.Rev.Stat.Ann. § 10:3–104. Caldwell claims that his note fails to meet the requirements of subsection (1)(b) of that section:

> (1) Any writing to be a negotiable instrument within this Chapter must
>
> . . . .
>
> (b) contain an unconditional promise or order to pay a *sum certain* in money and no other promise, order, obligation or power given by the maker or drawer except as authorized by this Chapter. . . .

*Id.* § 10:3–104(1)(b) (emphasis added).

According to Caldwell, his note fails to specify a sum certain because the following variable interest rate provision appears on the face of the note:

> [T]he Undersigned hereby promises to pay to the order of Payee interest on the balance of principal outstanding from time to time from the date of this note until paid, at the rate per annum which shall be two percent (2%) above the rate established and announced from time to time by Citibank N.A. New York, New York as its commercial prime rate . . ., adjusted daily.

As Caldwell admits, however, at the time the note was executed, Louisiana had a statute explicitly recognizing as negotiable any promissory note for an adjustable rate loan made for commercial or business purposes. That statute provides:

> Notwithstanding any other provisions of the law to the contrary, any person borrowing funds for commercial or business purposes, or deferring payment of an obligation for commercial or business purposes, may agree that the interest rate that is charged on the indebtedness may vary from time to time in accordance with the provisions of either the promissory note or other evidence of the indebtedness. Such conditions in either the promissory note or other evidence of the indebtedness shall not be deemed to be potestative nor shall such conditions destroy the negotiability of the promissory note or other evidence of the indebtedness.

La.Rev.Stat.Ann. § 9:3509.1(A).

Caldwell claims that this statute does not govern the dispute for three reasons.

First, he argues that at the time the note was executed, the statute existed only in Title 9, which is extrinsic to Louisiana's version of the U.C.C. in Title 10. Thus, he asserts the puzzling proposition that his note was negotiable for purposes of Title 9 but nonnegotiable for purposes of Title 10.

Second, Caldwell contends that the history of the adjustable rate commercial loan statute indicates that the Louisiana legislature did not intend to render adjustable rate notes negotiable under the U.C.C. until it specifically modified the relevant portions of the U.C.C. in 1988. Third, Caldwell again invokes the legislative history of the statute as support for the argument that the statute applies only to mortgage loans and not to investment loans.

We refuse to engage in a complicated analysis of legislative history when the plain language of the statute clearly establishes that the variable interest rate expressed on the face of the note does not destroy its negotiability. *See Rawlins v. National Transp. Safety Bd.,* 837 F.2d 1327, 1329 (5th Cir.1988); *General Elec. v. Southern Constr. Co.,* 383 F.2d 135, 138 (5th Cir.1967), *cert. denied,* 390 U.S. 955, 88 S.Ct. 1049, 19 L.Ed.2d 1148 (1968). This finding is consistent with the comment to section 3–104, which provides that "some writings may be made negotiable by other statutes or by judicial decision." La.Rev. Stat.Ann. § 10:3–104 comment 1.

*Plaintiff's Status as Holder in Due Course*

Caldwell also contends that summary judgment was improper because he raised a fact issue regarding Schwegmann's status as holder in due course under the shelter rule. He asserts that the record contains evidence indicating that Schwegmann could not have acquired this status because its transferor, the Bank of Commerce, was not a holder in due course. The bank was not a holder in due course, Caldwell argues, because it participated in fraud and securities violations in connection with the note.

Under Louisiana law, a party acquires holder in due course status by becoming a holder of a negotiable instrument: (1) for value, (2) in good faith, and (3) without notice that it is overdue, that it has been dishonored, or that any person has a defense against it or a claim to it. *See Bricks Unlimited, Inc. v. Agee,* 672 F.2d 1255, 1258 (5th Cir.1982); La.Rev.Stat.Ann. § 10:3–302. Caldwell does not dispute the fact that the Bank of Commerce was a holder for value. Instead, his argument— although only vaguely referable to the statutory language—implies that the Bank of Commerce failed to take the note in good faith and without notice of his alleged personal defenses.

■ " 'Good faith' means honesty in fact in the conduct or transaction concerned." La.Rev.Stat.Ann. § 10:1–201. Thus, a court must examine the facts surrounding the transaction to determine whether the holder took the note in subjective good faith. *See Schwegmann Bank & Trust Co. v. Simmons,* 880 F.2d 838, 842 (5th Cir.1989); *Republic of Texas Sav. Ass'n v. First Republic Life Ins. Co.,* 417 So.2d 1251, 1255 (La.Ct.App.), *cert. denied,* 422 So.2d 161 (La.1982); J. White & R. Summers, *Uniform Commercial Code,* § 14–2 at 709 (3d ed. 1988).

■ A person's notice of a fact involves both subjective and objective elements. A person has notice of a fact if the person has actual knowledge of it, has received notification of it, or has reason to know of it from all the facts known at the time of the transaction. La.Rev.Stat.Ann. § 10:1–201. An organization has notice of a fact from the time it is brought to the attention of the individual handling the transaction or from the time it would have been brought to that individual's attention if the organization had exercised due diligence. *Id.* The most important information from which a holder obtains notice is the information on the face of the instrument. *Id.* § 10:3–304; J. White & R. Summers, *Uniform Commercial Code,* § 14–2 at 714 (3d ed. 1988).

■ After reviewing the voluminous summary judgment evidence and the briefs, we conclude that Caldwell has failed to raise a triable issue of material fact regarding either the requirement of good faith or the requirement that the Bank of Commerce had no notice of a possible defense to the note. We also find no merit in Caldwell's unsupported assertion that the Bank of Commerce was somehow transformed from an agent to a principal or co-general partner because Quinn–L granted the bank a limited power of attorney. Imputing to the bank Quinn–L's knowledge of a possible defense would be contrary to agency principles of Louisiana law. *See Franklin Printing Co. v. Dorion,* 532 So.2d 885 (La.Ct.App.1988); *Pesson v. Kleckley,* 526 So.2d 1220 (La.Ct.App.1988).

Finally, we reject the contention that a limited power of attorney somehow made the bank a control person over the affairs of Quinn–L under either federal or state securities laws. As noted by Schwegmann, the cases that Caldwell cites for this proposition refute rather than support his argument. *See Cameron v. Outdoor Resorts of America, Inc.,* 608 F.2d 187 (5th Cir. 1979); *Drier v. Tarpon Oil Co.,* 522 F.2d 199 (5th Cir.1975).

*Conclusion*

We conclude that Schwegmann is entitled to summary judgment because Caldwell has failed to raise a triable issue of material fact. Caldwell's note is a negotiable instrument under Louisiana law. Furthermore, Schwegmann is entitled to all the rights of a holder in due course under the shelter rule because it acquired the note from a holder in due course. Accordingly, we affirm the judgment of the trial court.

AFFIRMED.