467 So.2d 1301 (1985)
Alan McKENDALL
v.
August WILLIAMS.
No. CA-2689.
Court of Appeal of Louisiana, Fourth Circuit.
April 9, 1985.
Writ Denied May 31, 1985.
*1302 Leonard J. Cline, Stephen M. Chouest, Cline & Chouest, Metairie, for defendant-appellant.
Louis A. Gerdes, Jr., New Orleans, for plaintiff-appellee.
Before KLEES, LOBRANO and WILLIAMS, JJ.
LOBRANO, Judge.
Appellee, Alan McKendall (McKendall) filed the instant suit against appellants, August Williams (Williams) and New York, New York, Inc. (the Corporation) for the balance of a loan paid by McKendall which he claims Williams and the Corporation owed. The trial court rendered judgment in favor of McKendall for $6,701.52, plus $750.00 in attorney fees. Williams has perfected this appeal.

FACTS:
On August 28, 1978, New York, New York, Inc., an ordinary Louisiana business corporation was formed for the purpose of opening and operating a "disco" lounge located at property owned by Williams. McKendall and Williams were the original officers and directors of the corporation.
McKendall was a general contractor. Williams, who had worked in construction, owned the building which would house the "disco". Together, both men invested personal funds, time, energy and effort into remodeling the building and opening the business. Both purchased materials and supplies and both contributed their labor.
On November 14, 1978, the corporation opened a regular corporate checking account at Liberty Bank and Trust Company (hereinafter, the bank). On January 29, 1979, a ten thousand dollar ($10,000.00) loan was made by the corporation (hereinafter, the original loan). The promissory note, evidencing the loan, was signed by both McKendall and Williams. The terms of repayment provided for thirty-two (32) consecutive monthly payments of three hundred forty-four dollars and 99/100 ($344.99). A payment book was given to the corporation.
On August 14, 1979, McKendall made a personal loan (hereinafter, the personal loan) with the bank in the amount of Seventeen thousand nine hundred fifty dollars and 68/100 ($17,950.68). This loan was made to McKendall personally, although the testimony of the Liberty Bank characterizes it as a d/b/a (doing business as) loan. The loan was not authorized by the corporation, nor was it signed by anyone other than McKendall in a personal capacity. The proceeds of the loan were distributed as follows: $5,000.00 was placed in the checking account of the corporation, $8,602.66 was applied to the balance owed on the original loan, and the remainder was interest, as this was a capitalized or discounted loan. The interest rate was higher than the original loan, it had a longer payment period and a different monthly payment.
Subsequent to the making of this personal loan, the corporation continued to make payments on the original loan in accordance with its terms. That is, the Liberty Bank never advised the Corporation or Williams of the purported consolidation of the loan, nor did it forward a new payment book, or request higher monthly payments.
The "disco" was scheduled to open in 1979 but because of zoning problems and other delays did not open until 1981. Meanwhile, the relationship between McKendall and Williams deteriorated.
Because the corporation was not making money and because of the strained relationship between the two men, McKendall sold his stock to Williams for the sum of Fifty seven hundred dollars and no/100 ($5,700.00) on August 31, 1981 as evidenced by a notarized Sale of Corporate Stock Agreement. That agreement provided the following:
"... In exchange for said transfer, vendee will pay to vendor the sum of $5,700 in cash, plus will assume all indebtedness of N.Y., N.Y., Inc. including *1303 but not limited to a promissory note payable to Liberty Bank & Trust Company in the original amount of $10,000.00, now reduced to approximately $2,414.93, payable in equal monthly installments of $344.99.
IT IS FURTHER AGREED that this agreement shall release Alan McKendall from any and all future liabilities in connection with this corporation and that August William will acquire all ownership in and to the said corporation...."
This agreement was prepared by McKendall's attorney, signed in his presence and notarized by him.
Williams, pursuant to that agreement, continued to make the monthly payments of three hundred forty-four dollars and 99/100 on the original loan until it was paid in February, 1982.
Approximately one year after selling his stock to Williams, McKendall was called upon by the bank to pay Six thousand seven hundred and one dollars and 52/100 ($6,701.52), the balance due on the personal loan of August 14, 1979. McKendall paid the balance on August 11, 1982 and filed this suit against Williams and the corporation alleging he paid off a corporate debt which Williams was obliged to pay.
In this appeal, Williams alleges that the trial court erred in concluding the personal loan was a corporate debt to be paid by him pursuant to the Stock Sale Agreement. We agree.
A corporation is a legal entity entirely separate and distinct in identity from the members who compose it. Landry v. St. Charles Inn, Inc., 446 So.2d 1246 (La. App. 4th Cir.1984). The authority to act on behalf of a corporation can only be conferred by the charter or a resolution of the board of directors. Margolis v. Allen Mortgage and Loan Corporation, 268 So.2d 714 (La.App. 4th Cir.1972). Furthermore, well settled is the rule that one who claims he is acting in a corporate capacity has the duty to disclose that he is contracting as an agent of the corporation and not as an individual, and the burden of proof is on the one claiming the agent relationship. Ruckman v. Mashburn, 428 So.2d 531 (La. App. 4th Cir.1983).
Carl Nogess, the lending officer who handled the personal loan transaction of August 14, 1979, testified the loan was made to Alan McKendall because of his credit and his account with the bank. Nogess testified that McKendall was a customer of the bank long before the corporation was formed. He testified the loan was made solely to Alan McKendall and not to the corporation or to Williams. It is this Court's opinion that the placing of the notation "d/b/a" or "doing business as" on McKendall's loan records does not bind the corporation absent expressed proof that McKendall was acting for the corporation and not in a personal capacity. McKendall did not sign the note as an officer of the corporation or official agent thereof nor did he produce any corporate resolutions or written authorization authorizing any additional or consolidation loans on behalf of the corporation. The bank looked to McKendall for repayment, not to the corporation or to Williams.
Furthermore, after this alleged consolidation loan, the bank allowed Williams to continue to pay the original loan under the terms and conditions that were originally contracted. No new payment book was sent to the corporation and no demand was ever made upon the corporation to pay any higher monthly installments. This further evidences the conclusion that the personal loan was never recognized by the bank as a loan to or debt of the corporation.
McKendall argues that the deposit of Five Thousand Dollars ($5,000) of the personal loan proceeds into the corporate account constituted a ratification of the loan by the corporation. Williams testified he was well aware that McKendall had deposited Five thousand dollars ($5,000) into the corporation's account to pay debts prior to opening but, to his knowledge, this amount represented McKendall's capital investment in the project. Williams testified he had no knowledge of any additional loan until McKendall filed the instant suit.
*1304 We conclude that the trial court erred in holding the personal loan to be an obligation of the corporation. Furthermore his suggested opinion that the original loan was in some way "a sort of continuing guarantee" for additional loans by the corporation and/or its stockholders is unfounded in law.
In Louisiana, a contract of guarantee is equivalent to a contract of suretyship. Ball Marketing Enterprise v. Rainbow Tomato, 340 So.2d 700 (La.App. 3rd Cir.1976). La. Civil Code Article 3035 defines suretyship as follows:
"Surety is an accessory promise by which a person binds himself for another already bound, and agrees with the creditor to satisfy the obligation, if the debtor does not."
Suretyship can never be presumed. It must be expressed and is to be restrained within the limits intended by the contract. La.C.C. Art. 3039. There must be an absolute expression to be bound. Ball Marketing Enterprise v. Rainbow Tomato, supra.
There is absolutely no evidence in the record that when the original loan was made that the corporation would act as a surety or continuing guarantor for any subsequent debts of its stockholders, officers or directors.
Although the terms of the stock sale agreement provide that Williams "... will assume all indebtedness of New York, New York, Inc., including, but not limited to..." the balance of the original loan, we conclude that the amount sought by McKendall was not a corporate indebtedness, nor was it guaranteed by the corporation. In fact, the record is clear that the corporation paid the original loan through the date of the stock sale, and Williams continued the payments until it was paid in full on February 1, 1982. The fact that the Bank erroneously consolidated the original loan with the personal loan does not persuade us to hold that it (the personal loan) became a corporate debt. The corporation and Williams did exactly what they agreed to do in the stock transfer, that is assume and pay the existing obligations of the corporation. Considering the factual happenings from another viewpoint, the corporation borrowed $10,000.00 and paid off $10,000.00. McKendall borrowed $5,000.00 which was placed in the corporate account as his capital contribution and therefore he is responsible for the payment of that debt.
For the above and foregoing reasons the judgment of the trial court is reversed, and McKendall's suit is dismissed with prejudice. All costs to be paid by McKendall.
REVERSED.