861 So.2d 592 (2003)
Cynthia BRIDGES, Secretary, Department of Revenue, State of Louisiana
v.
X COMMUNICATIONS, INC.
No. 03-CA-441.
Court of Appeal of Louisiana, Fifth Circuit.
November 12, 2003.
*594 John J. Lee, Jr., William A. Hood, The Godfrey Firm, P.L.C., New Orleans, LA, for Appellant, X Communications, Inc.
Alva C. Smith, Geneva Landrum, Department of Revenue, Legal Division, Baton Rouge, LA, for Appellee, Cynthia Bridges, Secretary, Department of Revenue, State of Louisiana.
Panel composed of Judges SOL GOTHARD, THOMAS F. DALEY and SUSAN M. CHEHARDY.
SUSAN M. CHEHARDY, Judge.
A corporate taxpayer appealed an assessment of additional sales tax by the Louisiana Department of Revenue. The Board of Tax Appeals vacated a portion of the assessment, set aside the penalty imposed, and ordered a refund of the payment made on that portion of the assessment. The Department of Revenue sought review in the district court, which reversed the part of the Board's ruling that was in favor of the taxpayer. The taxpayer now appeals the district court's action. We reverse and reinstate the decision of the Board of Tax Appeals.

FACTS
The tax assessments at issue here were made against Universal Telephone Company, Inc. ("UTC"), which was sold in July 1997 and became X Communications, Inc. ("X-Comm"). We refer to the company hereafter as "the taxpayer" or as "UTC/X-Comm."
In April 1996 the Louisiana Department of Revenue ("the Department") began a sales tax audit of UTC/X-Comm covering the period from January 1, 1993 through January 31, 1996. On August 6, 1996 Robert Ocker, who was then employed as controller of the taxpayer, signed a Department-supplied form that waived prescription for the tax period January 1, 1993 through December 31, 1993.[1] The form had been sent by the Department with a cover letter requesting that Ocker have an appropriate officer of the corporation sign the document. Ocker wrote "Controller" on the form below his signature.
On September 4, 1997 the Department issued to the taxpayer a notice of its intent to assess additional taxes, penalties and interest in the amount of $155,190.51 for the period January 1, 1993 through December 31, 1996. On September 22, 1997 the taxpayer's certified public accounting firm sent the Department a letter protesting the proposed taxes, penalties and interest.[2]
*595 On October 6, 1997 James Huey (then a member of the board of directors of UTC/X-Comm), signed a waiver of prescription covering the periods January 1, 1993 through December 31, 1994, listing himself as "CEO." In previous years, Huey had also served as an officer of the taxpayer corporation (president, treasurer), but he was not an officer at the time he signed the prescription waiver.
On July 7, 1998 the taxpayer's board of directors authorized payment to the Department of $34,482.00 in order to stop the running of interest on any sales tax due.
On October 19, 1998 the Department notified the taxpayer it was assessing additional taxes, penalties and interest for the period from January 1, 1993 through December 31, 1996 in the amount of $66,510.85, less the payment of $34,482.00, for a net amount due of $32,028.85.
On November 24, 1998, the taxpayer's board of directors authorized an additional payment to the Department in the amount of $5,888.00.
On December 18, 1998 the Department issued a Notice of Assessment for the period of January 1, 1993 through December 31, 1996 in the amount of $40,670.09 in additional taxes, $26,232.79 in interest, and $623.83 in penalties, offset by a credit for the $40,370.00 already paid, for a net amount due of $26,156.71.
On January 28, 1999 the taxpayer filed a petition with the Board of Tax Appeals, asserting that the waivers of prescription signed by Ocker and Huey were invalid because they were made without authorization by the board of directors. The taxpayer sought a determination that the tax for 1993 had prescribed and that no additional tax was due from 1994 through 1996. In addition, the taxpayer prayed that the additional monies it had already paid be refunded with interest and that the delinquent penalty be waived.
Although the Notice of Assessment did not segregate the amount by tax periods, for purposes of the appeal the parties stipulated that the assessments for the respective periods are as follows:

1993 $ 17,603.33
1994 17,804.51
1995 - 223.04 [credit]
1996 5,485.29

After a hearing at which both the taxpayer and the Department presented testimony, the Board of Tax Appeals rendered judgment partially in favor of the taxpayer and partially in favor of the Department. The Board set aside the sales tax assessment for the tax period January 1, 1993 through December 31, 1993 and ordered the Department to issue a refund to the taxpayer in the amount of the additional tax assessment plus interest. In addition, the Board vacated the penalty imposed in connection with that amount. Finally, the Board upheld the assessment of additional taxes, penalties and interest for the tax period January 1, 1994 through December 31, 1994.
The Department appealed the decision to the district court and UTC/X-Comm filed a cross appeal. Reviewing the matter on briefs by the parties and the record from the Board of Tax Appeals, the district court ruled in favor of the Department of Revenue as follows, in pertinent part:
It is the opinion of this Court that the 1993 as well as the 1994 tax period did not prescribe because valid waivers were obtained, and therefore the tax periods were held open. This Court also finds that the Board exceeded its authority by ordering a refund of taxes that were not paid under protest. The basis for this *596 Court's decision is articulately explained in the Defendant's Memorandum in Support of Petition for Judicial Review of Decision of the Board of Appeals. Therefore, this Court hereby adopts the arguments contained therein as its own.
The court reversed the Board of Tax Appeals' ruling that the assessment for the 1993 tax period had prescribed and also reversed the order that taxes not paid under protest be refunded. The court affirmed the Board's decision declaring that the 1994 tax period had not prescribed.
UTC/X-Comm has appealed to this Court. The taxpayer contends the district court erred in failing to use the proper standard of review, in finding that the taxpayer owed taxes for 1993 and 1994, in finding that taxes for 1993 and 1994 had not prescribed, in finding that valid waivers had been obtained and that the tax periods had been held open, in ruling that the taxes were not paid under protest, in failing to apply the correct burden of proof to the Department for establishing the validity of the waivers, and in adopting the arguments of the Department regarding agency, ratification and estoppel.

LAW AND ANALYSIS

Standard of Review
The taxpayer asserts that the district court's ruling, in effect, held that the Department merely needed to show an error of law in order for the district court to reverse the Board's ruling. The taxpayer contends that the district court's reliance upon the "error of law" standard is clearly erroneous, that the district court should have conducted a manifest error review of the Board's fact findings, and that its other findings must be viewed in light of such error.
In St. Pierre's Fabrication and Welding, Inc. v. McNamara, 495 So.2d 1295, 1298 (La.1986), our supreme court stated:
Judicial review of a decision of the Board [of Tax Appeals] is rendered upon the record as made up before the Board and is limited to facts on the record and questions of law. The Board's findings of fact should be accepted where there is substantial evidence in the record to support them and should not be set aside unless they are manifestly erroneous in view of the evidence on the entire record.
Thus, the applicable standard is the manifest error/clearly wrong standard. We review the remainder of the issues with that standard in mind.
Although most of the facts were stipulated, there was no stipulation of fact as to the issues of the apparent authority of Ocker and Huey and the alleged ratification by Huey of the Ocker waiver. The taxpayer argues the district court failed to conduct a proper review of the facts found by the Board because the court adopted the Department's arguments.

1993 Taxes
The parties do not dispute that taxes were owed; they dispute whether the taxes were prescribed. If the waivers of prescription signed by Ocker and Huey are valid, then prescription was suspended and the Department's assessments were correct.
The Department's brief refers to oral reasons for judgment issued by the Board of Tax Appeals. Similarly, the taxpayer's brief refers to factual findings by the Board. No oral or written findings of fact appear in either the Board's judgment or the record before us. Therefore, we can only infer the reasons underlying the Board's decisions on the issues. We surmise the Board found the waiver of prescription signed by Ocker was invalid and *597 that prescription had run on the 1993 assessment, but found the waiver of prescription signed by Huey was valid and suspended prescription on the 1994 assessment.
The validity of the waivers turns on whether Ocker and/or Huey either were authorized to waive this legal right on behalf of the corporation or whether they had apparent authority on which the Department was justified to rely.
Mandate is an act by which one person, the principal, confers authority on another person, the mandatary (or agent), to transact one or more affairs for the principal. La.C.C. art. 2989.
An agent's power or authority is composed of his actual authority, express or implied, together with the apparent authority which the principal has vested in him by his conduct.... As between principal and agent the limit of the agent's authority to bind the principal is governed by the agent's actual authority. As between the principal and third persons, the limit of an agent's authority to bind the principal is governed by his apparent authority.... Apparent authority is a judicially created concept of estoppel which operates in favor of a third party seeking to bind a principal for the unauthorized act of an apparent agent....
For the doctrine of apparent authority to apply, the principal must first act to manifest the alleged agent's authority to an innocent third party. Second, the third party must rely reasonably on the manifested authority of the agent. As the Courts of Appeal have correctly held, the principal will be bound for the agent's actions if the principal has given an innocent third party a reasonable belief the agent had authority to act for the principal.... The burden of proving apparent authority is on the party relying on the mandate.
A third party seeking to benefit from the doctrine of apparent authority may not blindly rely upon the assertions of an agent. He has a duty to inquire into the nature and extent of the agent's power. [Citations omitted.]
Boulos v. Morrison, 503 So.2d 1, 3 (La. 1987).
The finding of an agency relationship is a finding of fact which will not be overturned unless clearly wrong. F. Miller & Sons, Inc. v. Calcasieu Parish Sch. Bd., 02-1680 (La.2/25/03), 838 So.2d 1269.
The taxpayer contends that neither Robert Ocker nor James Huey were authorized to bind the corporation because the corporate bylaws vest decision-making authority in the Board of Directors and, hence, a simple employee of the corporation cannot bind the corporation without express authority from the Board of Directors. Ocker was controller of the corporation at the time he signed the waiver of 1993 taxes; Huey was CEO of the corporation when he signed the waiver of the 1993 and 1994 taxes. The difference between them is that Ocker was never more than an employee during his tenure with the taxpayer, while Huey was a shareholder and a member of the board of directors and also was an officer of the corporation for several years, although he was not an officer in 1997 when he signed the waiver of prescription.
The Department contends that Robert Ocker was designated as the taxpayer's representative for the audit. The audit began in April 1996 and Ocker advised the UTC board at the April 29, 1996 board meeting that the Department was conducting a sales tax audit. The board took no action to remove Ocker or to substitute any other person as company representative.
*598 Charles Ray Wright, a 21-year senior agent with the Department of Revenue, testified that it is common practice for company controllers to sign waivers of prescription for audits.
Ned Gauthier, chief sales tax reviewing auditor and veteran of 28 years with the Department, testified the issue of authority to sign a waiver has never been raised during his tenure with the Department.
The authority to act on behalf of a corporation can only be conferred by the charter or the bylaws of the corporation or by resolution of the board of directors. La.R.S. 12:81(A), 12:82(D); McKendall v. Williams, 467 So.2d 1301, 1303 (La.App. 4 Cir.), writ denied, 469 So.2d 986 (La.1985).
A party seeking to enforce an alleged contract against a corporation is required to establish that the officer or agent with whom he contracted was in fact authorized to bind the corporation. North American Sales Alliance, Inc. v. Carrtone Laboratories, Inc., 214 So.2d 167, 172 (La. App. 4 Cir.), writ denied, 253 La. 57, 216 So.2d 306 (1968). Any action taken in the name of a corporation that is unauthorized by the corporation cannot bind the corporation. Marsh Investment Corp. v. Langford, 490 F.Supp. 1320, 1324 (E.D.La. 1980), aff'd, 652 F.2d 583 (5th Cir. Unit A Aug.1981), cert. denied sub nom., Ponchartrain State Bank v. Marsh Investment Corp., 454 U.S. 1163, 102 S.Ct. 1037, 71 L.Ed.2d 319 (1982).
In Pesson v. Kleckley, 526 So.2d 1220, 1225 (La.App. 3 Cir.1988), the issue was whether an agent had authority to confect a lease for the corporation. The court held:
An actual agency relationship may be either express or implied. For some acts an agent's authority must be express. This is true for the agent to buy, sell, contract a loan, acknowledge a debt, draw or endorse promissory notes, and generally where the acts to be done are not merely those of administration or such as facilitate such acts....We think the act of binding a principal to the terms of a lease is one of those types of acts requiring express power.
By analogy, we find the act of surrendering or waiving a corporation's legal right, such as prescription, is the type of act that requires an express power.[3]
Where a document bearing such legal significance is involved, the other party should be on notice that express authorization is necessary for the agent to sign it. Any state agency can readily discover the officers of a domestic corporation from the secretary of state's office; further, simple familiarity with corporate structure should disclose that a "controller" is an employee, not an officer, of the typical corporation.
"No one may avail himself of ignorance of the law." La.C.C. art. 5. "Ignorance of the law, as has often been stated, is no excuse. This should have particular application to the officers charged with its enforcement." *599 Moresi v. State, Dept. of Wildlife and Fisheries, 552 So.2d 1259, 1264 (La.App. 3 Cir.1989). By analogy, employees of the state Department of Revenue should be charged with knowledge of the state's laws relating to transactions with corporations in enforcing tax laws.
We conclude, therefore, that the Department was not justified in relying on any perceived apparent authority of Robert Ocker to bind the taxpayer to a document that waived a legal right.
Alternatively, the Department has argued that Ocker's waiver of prescription was ratified later when James Huey signed the second waiver of prescription in October 1997. We find no merit to that argument, however. At the time Huey signed the document the prescription period had already accrued. The Department's right to pursue the action expired on December 31, 1996 and was not resurrected by the document signed months later, which did not expressly state it was reviving a right that had been perfected.
"[A] renunciation of prescription is an abandonment of the right derived from prescription that has accrued and is subject to stringent proof requirements." Lima v. Schmidt, 595 So.2d 624, 634 (La. 1992).

1994 Taxes
In contrast to the waiver of prescription regarding the 1993 taxes, the waiver of prescription for the 1994 taxes was signed by James Huey. Huey, as noted above, had served variously as president and treasurer of the corporation in prior years. Although he was not a board member at the time he signed the 1994 waiver, he listed himself as "CEO," a common abbreviation for "Chief Executive Officer" used in corporate terminology.
"The mission and authority which a legal entity such as a corporation must be presumed to have given its chief executive officer and top human functionary is certainly much broader than that which an employer generally is likely to give or have given lower echelon employees." Miller v. Keating, 349 So.2d 265, 269 (La.1977).
Considering Huey's prior positions of authority and responsibility within the corporation, as well as his designation of himself as CEO, Huey had sufficient implied authority for the Department to assume that he was authorized to execute the Agreement to Suspend Prescription on October 6, 1997. Hence, the waiver of prescription of the 1994 taxes was effective.
As noted previously, however, the waiver could not be effective for the 1993 taxes, because those had already prescribed at the time Huey signed.

Payment Under Protest
In making the tax payments, the taxpayer failed to comply with the payment-under-protest requirements of La. R.S. 47:1576. The district court found that the Board of Tax Appeals exceeded its authority by ordering a refund of taxes that were not paid under protest pursuant to La.R.S. 47:1576.
La.R.S. 47:1576 provides that if a taxpayer protests the payment of any tax or enforcement of any tax law, he must pay the amount due and at that time give notice of intention to file suit for recovery of the tax. The amount paid is then placed in escrow for 30 days. If suit is filed within that period, the funds will be held pending outcome of the suit. If suit is not timely filed, the taxpayer no longer has a right to proceed in district court for the recovery of taxes. Church Point Wholesale Beverage Co. v. Tarver, 614 So.2d 697, 704 (La.1993).
*600 Obviously, the taxpayer did not follow that procedure in this case. Nevertheless, the taxpayer argues that under La.R.S. 47:1481 et seq. the Board has the authority to order refund of taxes, regardless whether such taxes were paid under protest.
In Church Point Wholesale Beverage Co. v. Tarver, supra, our supreme court stated:
While the Payment Under Protest procedure found in 47:1576 is clearly intended to provide a postdeprivation remedy for the recovery of taxes, nowhere therein does the statute state that it is the sole remedy. The Claims Against the State procedure set forth in 47:1481 allows "any person who has a claim against the State of Louisiana for money erroneously paid into the State Treasury, or for any other claim" to present such claim to the Board of Tax Appeals. It is easily apparent that a tax voluntarily paid pursuant to an unconstitutional statute is "money" "erroneously paid into the State Treasury" by the taxpayer. A taxpayer has erred when he has paid taxes pursuant to an unconstitutional statute because he failed to notice the statute was unconstitutional and therefore paid taxes which were not legally due. At the very least, such a situation falls under the term "any other claim."
La.Rev.Stat. 47:1481 et seq. provides a proper vehicle for the recovery of taxes paid without protest pursuant to an unconstitutional statute. Additionally, any plaintiff whose rights are actually in controversy, i.e. not prescribed under 47:1481, may seek a judgment declaring the tax statute unconstitutional, with such judgment to be used in plaintiff's case before the Board of Tax Appeals.
614 So.2d at 706.
Hence, the Board of Tax Appeals did not exceed its authority in ordering a refund of the overpayment, despite the taxpayer's failure to make payment under protest pursuant to La.R.S. 47:1576.

DECREE
We find no manifest error in the fact determinations of the Board of Tax Appeals and we conclude the district erred in reversing the decision of the Board.
For the foregoing reasons, the judgment of the district court is reversed and the decision of the Board of Tax Appeals is reinstated.
REVERSED; DECISION OF BOARD OF TAX APPEALS REINSTATED.
NOTES
[1] Pursuant to La. Const. Art. 7, § 16, the prescription date for the 1993 sales tax year was three years from December 31 in the year in which the taxes were due, or December 31, 1996. The form, rather than waiving prescription, actually suspends the running of prescription for one year from what would otherwise have been the prescription date.
[2] Ocker was discharged from employment by UTC/X-Comm on April 30, 1997. The accounting firm, Rebowe & Company, took over the controller's duties for the company.
[3] For example, La.R.S. 12:82(G) provides:

Except as otherwise provided in the articles or by-laws, or by resolution of the board of directors, the president, vice-president or manager of any corporation or any foreign corporation doing business in this state, shall have power in the name and behalf of the corporation to authorize the institution, prosecution or defense of any suit and other legal proceedings, and no exception of want of authority shall lie on the part of any other party. Such persons shall have authority in the corporation's name and behalf to direct the issuance of conservatory writs and to bond property in custodia legis, to execute bonds in connection with any legal proceedings, and to make any affidavit required by law or the rules of the court. Such acts shall have the same force and effect as the act of the corporation itself, and be binding upon it.