# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## 11-576

LEE J. MONLEZUN, M.D.

VERSUS

LYON INTERESTS, INC., ET AL.

**********

APPEAL FROM THE
THIRTY-FIRST JUDICIAL DISTRICT COURT
PARISH OF JEFFERSON DAVIS, NO. C-399-10
HONORABLE STEVE GUNNELL, DISTRICT JUDGE

**********

**MARC T. AMY
JUDGE**

**********

Court composed of John D. Saunders, Jimmie C. Peters and Marc T. Amy, Judges.

**AFFIRMED.**

John F. Craton
Barousse & Craton, LLC
Post Office Box 1305
Crowley, LA   70527-1305
(337) 785-1000
COUNSEL FOR DEFENDANTS/APPELLEES:
    Gilbert A. Lyon, Jr.
    Mary Sue Lyon

Joseph A. Delafield
3401 Ryan Street, Suite 307
Lake Charles, LA   70605
(337) 477-4655
COUNSEL FOR DEFENDANT/APPELLANT:
    Lyon Interests, Inc.

**Scott J. Pias**
**522 Alamo Street**
**Lake Charles, LA   70607**
**(337) 436-1288**
**COUNSEL FOR DEFENDANT/APPELLEE:**
    **Emery F. Lyon**

**W. Thomas Barrett, III**
**3401 Ryan Street, Suite 307**
**Lake Charles, LA   70605**
**(337) 474-7311**
**COUNSEL FOR DEFENDANTS/APPELLEES:**
    **Charles H. Precht, III**
    **Kelly D. Precht**
    **Ethel Precht**
    **Charles H. Precht**

**David P. Bruchhaus**
**Mudd & Bruchhaus**
**410 E. College Street**
**Lake Charles, LA   70605**
**(337) 562-2327**
**COUNSEL FOR DEFENDANTS/APPELLEES:**
    **Charles H. Precht, III**
    **Kelly D. Precht**
    **Charles H. Precht**
    **Ethel Precht**

**Scott J. Privat**
**Privat & Privat**
**Post Office Box 449**
**Crowley, LA   70527**
**(337) 783-7142**
**COUNSEL FOR PLAINTIFFS/APPELLEE:**
    **Lee J. Monlezun, M.D.**

**Denise Lyon**
**12015 Highway 14**
**Lake Arthur,   LA 70549**
**In Proper Person**

**AMY, Judge.**

The plaintiff filed suit seeking to enforce a commercial pledge agreement against the defendant. The defendant, Lyon Interests, Inc., contended that the pledge agreement was unenforceable because it was made without proper corporate authority. After a trial, the trial court found that the agreement was enforceable against the defendant's collateral. The defendant appeals. For the following reasons, we affirm.

### Factual and Procedural Background

The record indicates that two brothers, Gilbert Lyon, Jr. and Emery Lyon, grew rice until, after an unsuccessful crop in 2007, they decided to leave the farming business. However, in 2008, Gilbert and his grandson, Gilbert Lyon, IV ("Gil"), decided to start farming on the Lyon brothers' land, using farming equipment owned by the defendant, Lyon Interests, Inc.

According to the record, Gil and his wife, Denise, obtained an agricultural loan from MidSouth Bank in the amount of $151,820.00 on April 1, 2008, which matured on March 15, 2009 ("2008 Loan"). Lyon Interests, through its president, Gilbert, signed a commercial security agreement listing Lyon Interests' equipment as collateral for the 2008 Loan. As a further part of the 2008 Loan package, Lyon Interests executed a corporate resolution authorizing Gilbert to grant security for any of Gil and Denise's obligations. According to MidSouth's records, the 2008 Loan was paid off on December 17, 2008.

The record indicates that Gil and Denise obtained a subsequent crop loan in the amount of $248,340.00 on January 27, 2009 ("2009 Loan"). Although the record indicates that Lyon Interests, again through Gilbert, executed a new commercial pledge agreement for 2009, the plaintiff stipulated that no new corporate resolution was executed. The collateral described in the 2009 commercial pledge agreement is

the "EXISTING COMMERCIAL SECURITY AGREEMENT DATED 04-01-08 COVERING ALL EQUIPMENT. EXECUTED BY LYON INTERESTS, INC."

Both the 2008 Loan and the 2009 Loan were further secured by an unlimited guaranty executed by the plaintiff, Dr. Lee J. Monlezun. After Gil and Denise defaulted on the 2009 Loan, MidSouth called in its guaranty and negotiated the 2009 promissory note and accessory documents to Dr. Monlezun. Dr. Monlezun then brought this action, seeking to enforce the commercial pledge agreement against Lyon Interests' farming equipment. Lyon Interests responded, alleging that there was no 2009 resolution authorizing Gilbert to use Lyon Interests' farming equipment as collateral for Gil and Denise's obligations and that the payment of the 2008 Loan prevented the 2008 commercial security agreement from being used to secure the 2009 Loan. Additionally, Emery intervened, asserting that he had a security interest in the equipment, arising from repairs he made to the equipment, and, among other things, that his signature on the 2008 corporate resolution was a forgery.[1]

Lyon Interests filed a request for injunction contending that Dr. Monlezun had inappropriately requested executory process. After a hearing, the trial court found that there were deficiencies in the 2008 corporate resolution and that the action must be converted to ordinary process. The trial court also issued a stay of the sheriff's sale of Lyon Interests' equipment.

Subsequently, a trial was held and the trial court took the matter under advisement. The trial court, in its reasons for judgment, found that Emery did sign the 2008 corporate resolution. Further, the trial court found that the resolution permitted the officers of Lyon Interests to enter into any agreements of any nature with MidSouth and that the resolution contained a "continuing validity" clause which

_____

[1] Charles H. Precht, Jr., Ethel Precht, Charles H. Precht, III and Kelly Precht filed a motion for leave to file a petition of intervention, contending that Emery sold a combine to Kelly Precht and that he, therefore, had an interest in some of the property at issue. Kelly Precht dismissed the motion prior to trial.

permitted MidSouth to rely on the resolution until it received written notice of its revocation. Therefore, finding that MidSouth never received written notice of the 2008 corporate resolution's revocation, the trial court held that MidSouth was entitled to rely on the resolution, and the debt was enforceable by Dr. Monlezun against the collateral. The trial court entered a judgment lifting the stay and allowing the sheriff's sale to go forward.

Lyon Interests appeals, asserting the following as error:

(1) The Trial Court erred in finding, "The loan was eventually paid in full in 2009 . . ." when the clear, explicit and uncontroverted evidence . . . documents the April 1, 2008 crop loan was paid in full on December 18, 2008.

(2) The Trial Court failed to recognize the extinguishment of the April 1, 2008 Agricultural Security Agreement which pledged Lyon Interests' farming equipment (as a result of full payment of the April 1, 2008 crop loan on December 18, 2008), and thus the January 27, 2009, crop loan was not secured by Lyon Interests' farming equipment.

(3) The Trial Court erred in permitting Midsouth and plaintiff to assert a secured interest against Lyon Interests' farming equipment on January 27, 2009 by using the extinguished April 1, 2008 Existing Commercial Security Agreement and an extinguished April 1, 2008, Lyon Interests' corporate resolution.

(4) The Trial Court failed to require proof of plaintiff's dollar value of his assigned alleged secured claim against Lyon Interests' farming equipment; and, failed to include a specific dollar value of plaintiff's claim in the Trial Court's Judgment dated March 10, 2011.

(5) The Trial Court's inconsistent written rulings on July 9, 2010 and February 16, 2011 pertaining to Lyon Interests' corporate resolution permitting pledging its farming equipment to the 2008 loan and the 2009 loan, violates the doctrine of law of the case.

**Discussion**

*Validity of the 2009 Commercial Pledge Agreement*

Lyon Interests' first three assignments of error are concerned with whether the trial court erred in finding that the 2009 commercial pledge agreement was enforceable against Lyon Interests' farming equipment. Lyon Interests specifically

contends that the trial court erred in finding that the 2008 Loan was paid off in 2009. Thus, according to Lyon Interests, due to that error, the trial court failed to find that the 2008 Loan and all of its documents were extinguished by payment and erroneously found that the 2009 commercial pledge agreement was enforceable against Lyon Interests' farming equipment.

Louisiana appellate courts review both law and facts. *S.J. v. Lafayette Parish Sch. Bd.*, 09-2195 (La. 7/6/10), 41 So.3d 1119. Factual findings are reviewed under the "manifestly erroneous or clearly wrong" standard. *Id.* at 1127. In order to reverse a factual determination of the trial court, the appellate court must first find that a reasonable factual basis does not exist for the finding and that the record establishes that the finding is clearly wrong. *Id.* In cases where there are two permissible views of the evidence, the fact finder's choice between them cannot be manifestly erroneous. *Id.* "However, where documents or objective evidence so contradict a witness's story, or the story itself is so internally inconsistent or implausible on its face that a reasonable fact finder would not credit the witness's story, a reviewing court may well find manifest error." *Id.* at 1127.

If the court of appeal finds that the trial court committed a manifest error of fact or a reversible error of law, the appellate court must then conduct a de novo review of the record and render a judgment on the merits. *Sieverd v. Permanent Gen. Ins. Co.*, 05-973 (La. 2/22/06), 922 So.2d 497. In making such a finding, the appellate court "must do more than simply review the record for some evidence which supports or controverts the trial court's findings; it must instead review the record in its entirety to determine whether the trial court's finding was clearly wrong or manifestly erroneous." *Id.* at 499. Thus, the appellate court may not reverse if the trial court's findings are reasonable in light of the record as a whole, even if the appellate court is

4

convinced that it would have weighed the evidence differently if sitting as the trier of fact. *Id.*

At the hearing on the request for injunction, Mr. Broussard testified that the 2008 Loan was paid off in the spring of 2009. However, he also testified that he was "not positive" that the 2008 Loan was still outstanding when the 2009 Loan was issued. At trial, he testified that the 2008 Loan was paid off by December 18, 2008 and that Gil and Denise did not owe any money at the time the 2009 Loan was made. Additionally, records from MidSouth Bank showing a payoff of the 2008 Loan on December 18, 2008, were introduced into the record.

After the trial, in its reasons for judgment, the trial court found that the 2008 Loan was "eventually paid in full in 2009." In Lyon Interests' estimation, this is significant because it alleges that the payment of the 2008 Loan extinguished the 2008 Loan and all accessory documents, including the 2008 corporate security agreement and the 2008 corporate resolution. However, even assuming that the trial court's finding was in error, "the mere discovery of an error does not, of itself, automatically equate with prejudice, nor does the mere discovery of an error justify an appellate court's *de novo* review." *Wooley v. Lucksinger*, 09-571, 09-584, 09-545, 09-586, p. 92 (La. 4/1/11), 61 So.3d 507, 581. Further, we note that "appellate courts review judgments, not reasons for judgment" and "oral or written reasons for judgment form no part of the judgment." *Id.* at 572. In this case, any error was as to a collateral issue, as discussed below, and did not affect the trial court's ultimate determination. *See Slaydon v. Cold Springs Hunting Club, Inc.*, 02-1397 (La.App. 3 Cir. 4/2/03), 842 So.2d 1187. Thus, we decline to conduct a de novo review of the record. *See Russell v. H&H Metal Contractors, Inc.*, 11-27 (La.App. 3 Cir. 6/1/11), 65 So.3d 806.

Lyon Interests contends that, because the 2008 Loan was paid in full before the 2009 loan was issued, any obligations under the 2008 Loan and its accessory

5

obligations are extinguished under the Louisiana Civil Code. Specifically, Lyon Interests relies on La.Civ.Code art. 1884, which states that "[s]ecurity given for the performance of the extinguished obligation may not be transferred to the new obligation without agreement of the parties who gave the security." However, even if the 2008 Loan was extinguished by payment on December 18, 2008, the collateral provided under the 2009 commercial security agreement could be transferred by agreement of the parties.

In other words, if Gilbert, as President of Lyon Interests, had the necessary authority to execute the 2009 commercial pledge agreement, La.Civ.Code art. 1884 is inapplicable to the facts of this case. Thus, the trial court properly based its analysis on whether Gilbert had the necessary authority to execute the 2009 commercial pledge agreement.

> The authority to act on behalf of a corporation can only be conferred by the charter or the bylaws of the corporation or by resolution of the board of directors. La.R.S. 12:81(A); 12:82(D); *McKendall v. Williams*, 467 So.2d 1301, 1303 (La.App. 4 Cir.), *writ denied*, 469 So.2d 986 (La.1985).
>
> A party seeking to enforce an alleged contract against a corporation is required to establish that the officer or agent with whom he contracted was in fact authorized to bind the corporation. *North American Sales Alliance, Inc. v. Carrtone Laboratories, Inc.*, 214 So.2d 167, 172 (La.App. 4 Cir.), *writ denied*, 253 La. 57, 216 So.2d 306 (1968). Any action taken in the name of a corporation that is unauthorized by the corporation cannot bind the corporation. *Marsh Investment Corp. v. Langford*, 490 F.Supp. 1320, 1324 (E.D.La. 1980), *aff'd*, 652 F.2d 583 (5th Cir. Unit A Aug.1981), *cert denied sub nom.*, *Pontchartrain State Bank v. Marsh Investment Corp.*, 454 U.S. 1163, 102 S.Ct. 1037, 71 L.Ed.2d 319 (1982).

*Bridges v. X Communications, Inc.*, 03-441, p. 9 (La.App. 5 Cir. 11/12/03), 861 So.2d 592, 598, *writ denied*, 03-3431 (La. 2/20/04), 866 So.2d 830.

Further, a mandatary must have express authority in order to "buy, sell, contract a loan, acknowledge a debt, draw or endorse promissory notes, and generally where the acts to be done are not merely those of administration or such as facilitate such

acts." *Id.* (quoting *Pesson v. Kleckley*, 526 So.2d 1220, 1225 (La.App. 3 Cir. 1988)). *See also* La.Civ.Code art. 2997.

A review of the record indicates that, at trial, Mr. Broussard testified that when Gil and Denise obtained the 2008 Loan, he had Gilbert and Emery, as the officers and shareholders of Lyon Interests, execute a corporate resolution. The 2008 corporate resolution, which was introduced into evidence, authorized Gilbert, as President[2] of Lyon Interests:

> To mortgage, pledge, transfer, endorse, hypothecate, or otherwise encumber and deliver to Lender any property now or hereafter belonging to the Corporation or in which the Corporation now or hereafter may have an interest, including without limitation all of the Corporation's real (immovable) property and all of the Corporation's personal (movable) property and rights, as security for the obligations of GILBERT A. LYON IV and DENISE LYON or the Corporation or for the payment of any loans, any promissory notes, or any other or further indebtedness of GILBERT A. LYON IV and DENISE LYON to Lender at any time owing, however the same may be evidenced. Such property may be mortgaged, pledged, transferred, hypothecated, encumbered or otherwise secured at the time such loans are obtained or such indebtedness is incurred, or at any other time or times, and may be either in addition to or in lieu of any property theretofore mortgaged, pledged, transferred, endorsed, hypothecated, encumbered or otherwise secured. The provisions of this Resolution authorizing or relating to the pledge, mortgage, transfer, endorsement, hypothecation, granting of a security interest in, or in any way encumbering, the assets of the Corporation shall include, without limitation, doing so in order to lend collateral security for the indebtedness, now or hereafter existing, and of any nature whatsoever, of GILBERT A. LYON IV and DENISE LYON to Lender. The Corporation has considered the value to itself of lending collateral in support of such indebtedness, and the Corporation represents to Lender that the Corporation is benefited by doing so.

The 2008 corporate resolution also contained a "continuing validity" clause which stated that:

> Any and all acts authorized pursuant to this Resolution and performed prior to the passage of this Resolution are hereby ratified and

---

[2] Emery contended that he replaced Gilbert as President of Lyon Interests in November of 2008. However, Dr. Monlezun presented contrary evidence, including an annual report filed with the Louisiana Secretary of State for 2009 indicating that Emery was the Secretary/Treasurer of Lyon Interests and Gilbert was the president. Emery asserted that the 2009 annual report had been tampered with somehow. Dr. Monlezun also filed into evidence an annual report filed in 2010 listing Emery as the president of Lyon Interests.

approved. This Resolution shall be continuing, shall remain in full force and effect and Lender may rely on it until written notice of its revocation shall have been delivered to and received by Lender at Lender's address shown above (or such addresses as Lender may designate from time to time). Any such notice shall not affect any of the Corporation's agreements or commitments in effect at the time notice is given.

Although Emery conceded that the signature on the 2008 corporate resolution looked like his, he denied signing it. However, Emery testified that he signed "a guarantee that [Gil could] use the equipment for a year." According to Mr. Broussard's testimony, after he drove to Emery's house to get his signature on the corporate resolution, they discussed what the document was, and that the equipment would be collateral for Gil and Denise's loan.

Mr. Broussard testified that, in connection with the issuance of the 2009 Loan, Gilbert executed a commercial pledge agreement on behalf of Lyon Interests. He further testified that Gilbert never told him that he was not authorized to sign the commercial pledge agreement. Mr. Broussard also testified that Gilbert indicated that he understood what he was signing. Additionally, Mr. Broussard testified that he was never informed, in writing, that Lyon Interests, Gilbert, or Emery wanted the 2008 corporate resolution cancelled.

The trial court ultimately found that Emery did sign the 2008 corporate resolution. The trial court also found that the 2008 corporate resolution authorized Gilbert, as an officer of Lyon Interests, to enter into "any agreements of any nature" with MidSouth and that those agreements would bind the corporation. Further, the continuing validity clause entitled MidSouth to rely on the 2008 corporate resolution until it received written notice of its revocation. Because MidSouth never received any such revocation, the trial court found that it was entitled to rely on the resolution and that the 2009 commercial pledge agreement is enforceable against Lyon Interests' equipment.

We find no error in the trial court's reasoning or its conclusion that the 2009 commercial pledge agreement is enforceable against Lyon Interests' equipment. A review of the record indicates that the 2008 corporate resolution specifically authorizes Gilbert, as President of Lyon Interests, to:

> mortgage, pledge, . . . or otherwise encumber and deliver to Lender any property now or hereafter belonging to the Corporation . . ., as security for the obligations of GILBERT A. LYON IV and DENISE LYON or the Corporation or for the payment of any loans, any promissory notes, or any other or further indebtedness of GILBERT A. LYON IV and DENISE LYON to Lender at any time owing, however the same may be evidenced.

Further, the 2008 corporate resolution provided that "[t]his Resolution shall be continuing, shall remain in full force and effect and Lender may rely on it until written notice of its revocation shall have been delivered to and received by Lender [.]" Thus, the plain language of the 2008 corporate resolution does not limit Gilbert's authorization to the 2008 Loan or the 2008 commercial security agreement. A review of the record supports the trial court's conclusions that Emery signed the 2008 corporate resolution and that MidSouth did not receive written notice of the revocation of the 2008 corporate resolution. Thus, MidSouth was entitled to rely on the resolution authorizing Gilbert to sign the 2009 commercial pledge agreement. Additionally, although the 2009 commercial pledge agreement references the 2008 commercial security agreement, it clearly contemplates encumbering "ALL EQUIPMENT" owned by Lyon Interests.

Therefore, we find that the trial court did not err in finding that the 2009 commercial pledge agreement was enforceable against Lyon Interests' equipment. These assignments of error are without merit.

*Value of Assignment*

In its fourth assignment of error, Lyon Interests contends that the trial court erred in failing to require Dr. Monlezun to prove the amount of his secured claim

against Lyon Interests' farming equipment and in failing to include a specific dollar value in the judgment. Lyon Interests asserts that, due to this failure, there is no way to discern how any sale proceeds should be divided. Dr. Monlezun argues that the value of the claim is the debt owed under the 2009 promissory note and that no value can be assigned until the equipment is sold. Further, Dr. Monlezun contends that, if any of the debt has been extinguished by payment, the burden lies on Lyon Interests to prove payment.

A review of the record indicates that Lyon Interests failed to raise this issue in the trial court. "Where a party fails to raise an issue in the trial court in pleadings, in an opposition to a motion for summary judgment, or in a motion for new trial, the issue is not preserved for consideration on appeal." *Stream Family Ltd. P'ship v. Marathon Oil Co.*, 09-561, p. 9 (La.App. 3 Cir. 12/23/09), 27 So.3d 354, 360, *writ denied*, 10-196 (La. 4/16/10), 31 So.3d 1064. Therefore, we do not address this issue for the first time on appeal.

*Law of the Case*

In its fifth assignment of error, Lyon Interests asserts that the trial court's rulings concerning the hearing on the injunction and trial are inconsistent. Lyon Interests contends that this violates the doctrine of law of the case and that the trial court's earlier findings should be binding.

In its reasons for judgment concerning the hearing on the injunction, issued July 8, 2010, the trial court found that the 2008 corporate resolution "expressly permitted pledging the farming equipment to the 2008 crop not the 2009 crop loan." However, in its reasons for judgment after trial, issued February 16, 2011, the trial court found that the language of the 2008 corporate resolution and the commercial security agreement "both indicate a 'continuing' guaranty agreement, and by its clear language,

10

the guaranty cannot be limited as only providing security for the promissory note of April 2008."

The supreme court recently reiterated the "law of the case" doctrine in *Arceneaux v. Amstar Corp.*, 10-2329, p. 7 (La. 7/1/11), 66 So.3d 433, 448 (citations omitted), stating:

> The law of the case refers to a policy by which the court will not reconsider prior rulings in the same case. The law of the case principle relates to (a) the binding force of trial court rulings during later stages of the trial, (b) the conclusive effects of appellate rulings at trial on remand, and (c) the rule that an appellate court will ordinarily not reconsider its own rulings of law on a subsequent appeal. Among reasons assigned for application of the policy are: the avoidance of indefinite relitigation of the same issue; the desirability of consistency of the result in the same litigation; and the efficiency, and the essential fairness to both sides, of affording a single opportunity for the argument and decision of the matter at issue. However, even when applicable, the law of the case is discretionary and should not be applied in cases of palpable error or where application would result in injustice.

Generally, "[a]rgument is barred where there is merely doubt as to the correctness of the former holding, but not in cases of palpable former error or so mechanically as to accomplish manifest injustice." *Bank One, Nat'l Assn v. Velten*, 04-2001, p. 7 (La.App. 4 Cir. 8/17/05), 917 So.2d 454, 459 (quoting *Petition of Sewerage and Water Board of New Orleans*, 278 So.2d 81, 83 (La.1973)), *writ denied*, 06-40 (La. 4/28/06), 927 So.2d 283, *cert. denied*, 549 U.S. 826, 127 S.Ct. 349 (2006). Further, the doctrine will not be applied to "supplant the Code of Civil Procedure provision which clearly permits a reconsideration of the overruling of peremptory exceptions" or "when the underlying, operative facts upon which the court's prior decision was based have changed." *Id.* We also note that "[t]he doctrine does not apply in the context of a trial court ruling on interlocutory issues or a transferee court being asked to consider a ruling of the transferor court." *Land v. Vidrine*, 10-1432, p. 9 (La. 3/15/11), 62 So.3d 36, 42.

Here, there was neither a permanent injunction nor a "final decree" issued after the hearing on the injunction. Instead, the trial court issued a preliminary injunction, which is "essentially an interlocutory order issued in a summary proceeding incidental to the main demand for permanent injunctive relief." *Bank One, Nat'l Ass'n*, 917 So.2d 454, 458. Therefore, we conclude that the law of the case is inapplicable in this instance. This assignment of error is without merit.

## DECREE

For the foregoing reasons, the judgment of the trial court in favor of the appellee, Lee J. Monlezun, M.D., is affirmed. Costs of this proceeding are assessed to the appellant, Lyon Interests, Inc.

**AFFIRMED.**