GUIDRY, J.
12This appeal raises the procedural question of whether a substitute judge can sign a written judgment giving binding effect to an interlocutory ruling rendered by the original judge who subsequently recused from the case. Finding that the substitute judge improvidently signed a judgment on behalf of the recused judge, we vacate the judgment rendered.
*581 FACTS AND PROCEDURAL HISTORY
Tyra Ann Smith and Chadrick Galen Starkey were married in March 1995, and from their union, three children were born. On June 20, 2008, the parties filed separate petitions for divorce. Mr. Starkey filed his petition in Tangipahoa parish under docket number 2008-0001946. Ms. Starkey filed her petition in St. Helena parish under docket number 20,153, but her action was eventually transferred and consolidated with Mr. Starkey’s divorce action in Tangipahoa parish.[1] The divorce action in Tangipahoa parish was allotted to Judge Ernest G. Drake.
In Mr. Starkey’s petition for divorce, he declared the following, in pertinent part: that he and Ms. Starkey had lived separate and apart since June 13, 2008; that he desired a divorce pursuant to La. C.C. art. 102; that it would be in the best interest of the children that the parties be granted joint custody of the children with him designated as domiciliary parent; and that it would be in the best interest of the children that he be granted exclusive use and occupancy of the family residence.
In her petition, Ms. Starkey alleged that she and Mr. Starkey had physically separated on May 25, 2008, and that she desired a divorce under La. C.C. art. 102. | aShe stated that she had physical custody of the couple’s minor children and because of several acts and threats of violence allegedly committed by Mr. Starkey that she described in the petition, Ms. Starkey averred that it would be in the best interest of the children that joint custody be awarded designating her as the domiciliary parent and granting Mr. Starkey restricted, supervised visitation. She further requested that the provisions of the “Post-Separation Family Violence Relief Act,” La. R.S. 9:361-369, be applied to designate Mr. Starkey as a family violence perpetrator and that she be granted exclusive use and occupancy of the family home in Greensburg, Louisiana.
A hearing on the separate petitions for divorce was held on August 4, 2008, before Judge Drake. At the conclusion of that hearing, Judge Drake awarded the parties joint custody of the children with Ms. Starkey designated as domiciliary parent and further granted Ms. Starkey the use of the former matrimonial domicile. Judge Drake allocated Mr. Starkey physical custody[2] of the minor children on the first, third, and fourth weekends of the month commencing at 6:00 p.m. on Friday and ending on Sunday at 6:00 p.m. Judge Drake refused to find Mr. Starkey a family violence perpetrator. The judge then asked that a written judgment be drafted for his signature based on the rulings he *582 had made; however, a written judgment was never submitted for the judge’s signature.
On October 19, 2009, Mr. Starkey filed an amended petition for divorce in which he asserted that the parties “made attempts at working toward a potential reconciliation since the original filing; however, the parties never had a formal reconciliation and petitioner is still entitled to and desires a divorce in this matter.” In the amended petition, Mr. Starkey alleged that Ms. Starkey had “committed |4adultery along with acts including criminal activity and emotional/verbal abuse along with threats to his person.” Therefore, he alleged there had been a “material change of circumstances since the first hearing” and that it would be in the best interest of the children for him to be awarded sole custody. Mr. Starkey also requested an award of child support in the amended petition. A hearing on Mr. Starkey’s amended petition was scheduled for January 19, 2010.
On December 10, 2009, Ms. Starkey filed an answer to Mr. Starkey’s amended petition that included a peremptory exception raising the objection of no cause of action to Mr. Starkey’s request to modify the original custody decree imposed by Judge Drake following the August 4, 2008 hearing. In the exception, Ms. Starkey acknowledged that a judgment had “never been prepared and submitted” to the court, but she nevertheless asserted that Judge Drake’s August 4, 2008 ruling was a considered decree, and as such, Mr. Starkey had to establish that the current custody arrangement was “deleterious” to the children in order to justify a change. Judge Drake set the exception to be heard at the January 19, 2010 hearing.
On January 19, 2010, Judge Drake held a pre-trial conference wherein he raised the issue of why his August 4, 2008 ruling was not memorialized into a formal written judgment and presented to him for signing. Judge Drake then learned that Ms. Starkey’s prior counsel had informed a member of his staff that the parties had reconciled. Later that day, Judge Drake heard arguments on Ms. Starkey’s objection of no cause of action and denied the exception. The rule for custody, raised in Mr. Starkey’s amended petition for divorce, was continued to the following day.
On the following day, prior to hearing the rule for custody, Judge Drake informed the parties that he had been informed that the parties had reconciled for a period following his prior ruling on August 4, 2008. The parties disputed whether | ^reconciliation had occurred. Because Judge Drake was “burdened with the knowledge of the communication from former counsel to [his] transcript coordinator” and the concern expressed by Ms. Starkey’s counsel about the “appearance of prejudice,” Judge Drake self-recused from the case. In the written recusal signed by the judge, he stated that the parties had stipulated to continuing the existing protective orders and further stipulated to the weekends Mr. Starkey would have physical custody of the children. The case was then re-allotted to Judge Zorraine M. Waguespack.
On February 2, 2011, Mr. Starkey filed a motion to reset his rule for child custody and/or for a custody evaluation. Several hearings on the reset rule were held before Judge Waguespack, but before a full hearing could be completed on the reset rule, Judge Waguespack also recused from the case, and the matter was re-allotted to Judge Wayne Ray Chutz. At a hearing held on January 28, 2012, Judge Chutz heard additional testimony from the parties and ordered the transcripts of the prior hearings held before Judges Drake *583 and Waguespack[3] before recessing the case. After reviewing the evidence, Judge Chutz determined that the preliminary issue that he needed to decide was whether the parties had reconciled following the August 4, 2008 judgment. Based on his review of the evidence, Judge Chutz found that the parties had not reconciled, and thus he held that Judge Drake’s August 4, 2008 ruling was a valid considered decree. As such, he concluded that as a “successor judge,” he would sign a written judgment in conformity with Judge Drake’s August 4, 2008 ruling. A judgment to that effect was signed by Judge Chutz on March 27, 2012, and it is the validity of that judgment that is challenged by Ms. Starkey in this appeal.
[ DISCUSSION
On appeal, Ms. Starkey contends that the Judge Chutz erred in signing a written judgment in conformity with Judge Drake’s August 4, 2008 ruling as a “successor judge.” We find merit in Ms. Starkey’s contention.
Louisiana Revised Statutes 13:4209(B)(1) provides that
In cases which are heard and in which judgment is rendered, but not signed, whether the case was taken under advisement or not, if the judge who rendered the judgment die s, resigns, or is removed from office, or if his term expires before signing judgment in the case, his successor in office shall have the authority to sign a judgment which conforms with the judgment rendered. [Emphasis added.]
Based on the provisions of this statute, it is evident that Judge Chutz was not a successor judge to Judge Drake. While Judge Drake was removed from presiding over the Starkeys’ case, he did not leave office as a judge in the Twenty-First Judicial District Court. Thus, Judge Chutz, who already occupied an office in the Twenty-First Judicial District Court as a sitting judge, did not and could not succeed to Judge Drake’s seat or “office” in the Twenty-First Judicial District Court because Judge Drake still occupied the position. Instead, Judge Chutz simply inherited the Starkeys’ case from Judge Drake. The authority granted under the provisions of La. R.S. 13:4209 clearly applies only when one judge succeeds to the office or seat of another judge and not when a judge simply inherits a case from a judge. See Employers National Insurance Company v. Workers’ Compensation Second Injury Board, 95-1756, p. 5 (La.App. 1st Cir.4/4/96), 672 So.2d 309, 312; see also Louisiana Paving Co., Inc. v. St. Charles Parish Public Schools, 593 So.2d 892, 895 (La.App. 5th Cir.1992).
Moreover, Judge Chutz, despite his finding to the contrary, did not have authority under the doctrine of “law of the case” to sign the March 27, 2012 judgment giving effect to Judge Drake’s August 4, 2008 ruling. The law of the case is a policy by which the court will not reconsider prior rulings in the same |7case, and generally refers to the binding effect of trial court rulings during the later stages of the trial. See Arceneaux v. Amstar Corp., 10-2329, p. 14 (La.7/1/11), 66 So.3d 438, 448. The doctrine does not apply in the context of a trial court ruling on interlocutory issues. Land v. Vidrine, 10-1342, p. 9 (La.3/15/11), 62 So.3d 36, 42; Monlezun v. Lyon Interests, Inc., 11-576, p. 11 (La.App. 3d Cir.11/2/11), 76 So.3d 628, 637. Written reasons for judgment are considered to be interlocutory rulings and do not carry the finality of a judgment. Prior to final judgment, a trial judge may, at his *584 discretion, change the substance or the result of interlocutory rulings. Ryan v. State Farm Mutual Automobile Insurance Company, 10-0961, p. 4 (La.App. 1st Cir.12/22/10), 68 So.3d 563, 566, unit denied, 11-0172 (La.4/1/11), 60 So.3d 1250. As an interlocutory decree, it was improper to give Judge Drake’s August 4, 2008 ruling the binding effect of a final judgment under the law of the case doctrine. See Glenwood Hospital, Inc. v. Louisiana Hospital Service, Inc., 419 So.2d 1269, 1271 (La.App. 1st Cir.1982). Therefore, we find the March 27, 2012 judgment signed by Judge Chutz to be fatally defective and consequently invalid.
CONCLUSION
For the foregoing reasons, we vacate the March 27, 2012 judgment signed by Judge Chutz based on his lack of authority to sign the judgment rendered. Costs of the appeal in these consolidated matters are assessed against the appellee, Chadrick Galen Starkey.
JUDGMENT VACATED.
Judge CRAIN concurs and assign reasons.

. According to an August 4, 2008 minute entry, on the motion of both parties, Judge Drake ordered that the divorce action filed by Ms. Starkey be transferred to Tangipahoa parish and consolidated with Mr. Starkey’s divorce action, along with a petition for protective orders filed by Ms. Starkey in Tangipahoa parish on June 17, 2008. The "Notice of Transfer” in the record, however, shows that St. Helena parish did not transfer Ms. Starkey’s action to Tangipahoa parish until October 25, 2012, at which time the divorce action was assigned docket number 2012-0003581 and consolidated with Mr. Starkey’s divorce action. Then on November 9, 2009, the court again consolidated a subsequent petition for protective orders filed by Ms. Starkey in Tan-gipahoa parish on October 21, 2009, with Mr. Starkey's pending divorce action.

. Although Judge Drake referred to the physical custody allocated to Mr. Starkey as "visitation,” the time that parents with joint legal custody share with their children is more properly described as a physical custody allocation of a joint custody plan, as physical custody is actual custody. Cedotal v. Cedotal, 05-1524, p. 5 (La.App. 1st Cir.11/4/05), 927 So.2d 433, 436.

. The transcripts of those other hearings are not contained in the record before us.